Cross *v.* Pinckneyville Mill Co.

ALVIN CROSS, Appellant, *v.* THE PINCKNEYVILLE MILL COMPANY, Appellee.

ZACHARIAH CROSS, Appellant, *v.* THE SAME, Appellee.

### APPEAL FROM PERRY.

The manufacture of lumber, flour and meal is within the meaning of the act of 1849, authorizing " the formation of corporations for manufacturing, agricultural, mining, or mechanical purposes."

A certificate of the Secretary of State to the effect that a duplicate of the certificate of organization of a company under the above act, had *not* been filed in his office, is not evidence. Nor does it seem that the omission to file such certificate would defeat the organization.

Payment of subscriptions to stock made before the organization of a company under the above act of 1849, will be enforced, if the organization is afterwards perfected.

THIS was an action of assumpsit, originally commenced by appellee, before a justice of the peace, to recover from appellant three installments of fifteen per cent. each on two shares of stock of $50 each, alleged to have been subscribed by appellant to said company. This cause was taken to Perry Circuit Court by appeal, and tried by the court, BREESE, Judge, presiding, at October term, 1855. From the judgment of the court below, which was in favor of the company, an appeal is prosecuted to this court.

The subscription on which this suit is brought was signed by appellant about one month before any effort was made to incorporate the company.

The appellant insisted that there was no proof below of organization of said corporation, it not being shown, in addition to the certificate filed with the County Court, that a duplicate certificate of organization of said company was filed in the office of the Secretary of State, as required by the statute. See Laws of 1849, page 87.

HOSMER and WATTS, for Appellant.

UNDERWOOD and HAMILTON, for Appellee.

SCATES, C. J. The principal questions presented upon the argument, are, 1st—Whether the defendants have been fully organized under the act of 1849, pp. 87, 88, Secs. 1, 2, 3, 5; 2nd—Whether there is sufficient proof of that fact, Sec. 9; and 3rd—Whether the plaintiff is liable to the defendants upon calls made upon his subscription to the stock of the company; Secs. 6, 7, 10, 18.

We answer and resolve all these questions in the affirmative.

Upon the first we remark that the manufacture of lumber, flour and meal is within the meaning of the act; the number of incorporators is sufficient; three may, and here five have made, signed, acknowledged, and filed in the office of the clerk of the County Court a certificate of incorporation, containing the essential facts and information intended to be communicated and made public.

*Secondly,* This fact is established *prima facie,* by the kind and quantum of evidence provided by the ninth section, which makes a copy of the certificate filed with the clerk, duly certified by him, " presumptive legal evidence of the facts therein stated." But the ground of objection under these propositions took a wider range, under a certificate from the Secretary of State, that a duplicate of the certificate of organization had not, on 29th September, 1854, or prior thereto, been filed in the office of Secretary of State, as required by the first section.

I am not aware of any statute or rule of law that makes such a certificate evidence of any thing. The certificate of the Secretary will be sufficient to authenticate the laws of the United States, of other States, (Rev. Stat. p. 233, Sec. 6,) and " all laws, acts, resolutions, (of our own State,) or other records, appertaining to his said office," id. p. 491, Sec. 5. But I deem it a misapprehension of the true object of such a certificate, when offered to prove what is not of record, or that this certificate is not of record. Any person who has examined offices or records who can, may swear and so prove that the matter is not there or of record. The Secretary may indirectly establish the

negative fact here offered in evidence by certifying to the *actual time* of such filing, and so, by fixing the time, exclude any other time.

But as it was received without objection, we take the facts as stated, that is, that the duplicate certificate of organization had not been filed in the Secretary's office on or prior to that day, still the facts are unimportant to defeat the organization or rights growing out of it. We feel no disposition to explain away, excuse compliance, or dispense with, any requirements of statutes, especially those which may affect the rights of third persons or parties interested. There is, however, a well settled distinction between mandatory and directory provisions. And these, like those of private contracts, are settled and enforced according to the *intention* and *true meaning* of the legislature, deduced from the act, and sometimes aided by other acts in *pari materia*, and extraneous circumstances. The filing of this duplicate seems by the first section a secondary object, and we may only conjecture its uses, as multiplying the places of publicity, proofs, and the chances of preservation of the evidence from loss, accident, or destruction. This view is confirmed by the language of the second section in declaring that "when *the certificate* shall have been filed as aforesaid," the persons signing, and their successors, "shall be a body politic and corporate in *fact* and in name," and is further strengthened by the ninth section, declaring a *copy* of it, certified by the county clerk, "presumptive legal evidence of the facts therein stated." We should endeavor by construction to aid in carrying out the true intention and effectuating the object of the law. Here it seems to be to encourage and aid in the establishment of such manufactures, &c., as will meet and supply the wants and demands of the people. We do not think these ends would be promoted by strict technical constructions, converting every direction and detail of powers into a mandatory pre-requisite of corporate existence. A similar precautionary direction, and of great utility to the public, is found in the general railroad act of 1849, special session, pp. 23, 32, Secs. 20, 43, in relation to filing maps and profiles of the road with the Secretary of State, and of parts relating to each county, with the county clerk and recorder. We give this as the true and apparent intent of the legislature upon the face of the law, and would by no means be understood as questioning the general doctrine as laid down and sustained by the current of authorities. Whatever is expressly or impliedly required to be done as essential to bring the corporation into existence must be done. Ang. and Am. on Corp. 67, Sec. 7; *Fire Department of New York* v. *Klip,* 10 Wend. R. 266.

*Third,* The company thus organized, made and gave due notice of calls for installments upon plaintiff, among others, as a subscriber to the stock; and this is resisted upon the ground that his subscription was before the organization, and is therefore void or voidable for want of a promisee, consideration, or mutuality, he never having met, or acted with others in this subsequent organization, or recognized them as a corporation. This presents the broad ground of his obligation or liability on such preliminary subscription. We think it sustainable upon sensible distinctions, and by authority of adjudged cases. A distinction has been made between a mere subscription of stock, which could only be enforced by forfeiture or sale of the share, and those subscriptions which contained a promise to pay, upon which an action may lie. *Salem Mill Dam Corporation* v. *Ropes,* 6 Pick. R. 31. Held, in *Bridgewater Academy* v. *Gilbert,* 2 Pick. R. 580, that the action would not lie, where there was no such promise. *Franklin Glass Co.* v. *White,* 14 Mass. R. 286; *Chester Glass Co.* v. *Dewey,* 16 Mass. R. 94.

But another distinction was recognized as substituting an implied liability for money had and received or laid out and expended, when subscriber had paid part, and in faith of it, further expenditures had been incurred. *Farmington Academy* v. *Allen,* 14 Mass. R. 172; 2 Pick. 580.

Many decisions have supported the action upon an express promise to pay calls upon shares subscribed. *Worcester Turnpike Corporation* v. *Willard,* 5 Mass. R. 80; *Andover and Medford Turnpike Corporation* v. *Gould,* 6 Mass. R. 40; where, however, it appeared unauthorized and unaccepted by the corporation, it was not enforced. *Essex Turnpike Corporation* v. *Collins,* 8 Mass. R. 292. In *Phillips' Limerick Academy* v. *Davis,* 11 Mass. R. 113, a subscription and agreement to pay towards the erection of an Academy, before an act of incorporation of the enterprise, the court held could not be enforced by the corporation for want of a promise and mutuality. *The County Commissioners of Randolph County* v. *Jones,* Breese 103; and *Wallington Manufacturing Company* v. *Fox,* 12 Vt. R. 304; stand upon the same grounds; and *Mayo* v. *Chenoweth,* Breese R. 155, for want of a promisee. In *The Scots Charitable Society* v. *Shaw, adm'r.,* 8 Mass. R. 532, a recovery was sustained while the court doubted the right of recovery.

While this court has required all the pre-requisites of the charter to be complied with, it has upheld the power of the directory to require payment from the stockholders in incorporations for business purposes. *Barret* v. *Alton and Sangamon Railroad Company,* 13 Ill. R. 504. It has further held, that the subscription is not invalidated by a failure to exact the advance

payment, and the minutes and books of the company are evidence of its acts and proceedings, and such acts are *prima facie* evidence of a compliance with the pre-requisites of their charter, and the regularity and legality of their proceedings.    *Ryder* v. *Alton and Sangamon Railroad Company*, 13 Ill. R. 516.

The true and correct principle is laid down in *Kidwelly Canal Company* v. *Roby*, 2 Price R. 93, (1 Eng. Exch. R. 189;) where a subscriber, to an agreement among the parties to it, to promote a joint undertaking or common purpose, was held liable for his subscription as a shareholder to the corporation afterwards formed, under an act of Parliament subsequently obtained to carry out that undertaking and common object.

The same principle has been applied, and a subscription, before the association was organized under a general banking law of New York, was enforced at the suit of the President of the Company.    *Staunton, President of the Albany Exchange Bank*, v. *Wilson*, 2 Hill R. 153.

Again, in *The Hamilton and Deansville Plankroad Company* v. *Rice*, 7 Barb. S. C. R. 157, it was applied under the general plankroad law of that State—and the court held not only the contemplated company, a promisee and the promise good to them as a third person, but that there was mutuality, and a sufficient consideration in the stock, dividends and general interests of the company to which the promisor became entitled.

*The Covington, Coal Creek and Jacksonville Plankroad Company* v. *Moore*, enforces the liability on like facts, 3 Indiana R. 510 ; which is also applied to insurances in *Judah* v. *The American Live Stock Insurance Company*, 4 Indiana 333.    Tennessee adopts and enforces the same liability.    *Gleaves* v. *The Brick Church Turnpike Company*, 1 Sneed R. 491.    *Tracy* v. *Yates*, 18 Barb. S. C. R. 152, does not militate with this doctrine.    It was an attempt to fix a liability for past debts of the company, personally upon a new and subsequent stockholder, who had *bona fide* paid in her subscription to an insolvent and sinking concern ; which the court evidently seem to regard as a swindling adventure.    The sacrifice was sought to be doubled by fixing the day of subscription, instead of the day of payment as the time when she became a stockholder, but the court held that she became such only on payment.

Parties should not be permitted to toy and trifle with the rights and interests of others, by agreeing and entering into such enterprizes with others, where expense and trouble must be incurred in the preparation for and organization of companies, and larger or less sums may be expended, before they are told by those, upon the confidence of whose means and assistance they venture, that they will withdraw, and set up the

endless technicalities of the law as a justification and defence. Should these be encouraged and sustained, the public will derive but little good from general acts of incorporation.

These acts are intended to invite and aid small capitalists by association to furnish and accommodate the growing wants of the community. The policy is judicious and much may be accomplished from limited means; when it is understood that in this, as in other agreements, parties will be held to the performance of their contracts in which the rights and interests of others are involved.

*Judgment affirmed.*