# JOHN JOHNSTON

*v.*

# THE EWING FEMALE UNIVERSITY.

1. PLEADING — *when special plea amounts only to the general issue.* When a special plea avers against that only which the plaintiff is bound to prove under the general issue, it amounts to no more than that issue, and is obnoxious to a special demurrer for that cause.

2. PLEADING AND EVIDENCE — *what amounts to the general issue.* In an action against a party for not paying his subscription, which was made for building a university, upon the condition that a building should be erected within eighteen months, worth $10,000, the defendant pleaded specially that this condition had not been complied with. This only amounted to the general issue, as the plaintiff was bound to prove it under that issue.

3. SUBSCRIPTION *to an enterprise before it becomes incorporated — is valid.* A subscription for the building of a university, made prior to its incorporation, but in contemplation thereof, is legal, and the party making it is bound to fulfill.

4. INCORPORATION OF INSTITUTIONS OF LEARNING — *of the acknowledgment of the certificate thereof under act of* 1849. Where persons are seeking to become incorporated under the act of January 26th, 1849, entitled "An act for the incorporation of institutions of learning," it is not essential that the officer taking the acknowledgment of the certificate of incorporation should certify that the persons signing the same were personally known to him.

5. SAME — *of erasures and interlineations in certificate of a copy.* In certifying a copy of the same proceedings from his office, the secretary of state made a mistake, as appeared from the copy, in stating the date of filing, which he erased, and interlined the true date. This was not material, and did not render the copy inadmissible in evidence.

6. EVIDENCE — *proof of execution of instruments.* Where a subscription paper is declared on as an instrument signed by the defendant, he should deny its execution under oath, in order to make it necessary to prove its execution, otherwise, it is admissible of course.

7. "ERECTION" OF A BUILDING — *in what it consists — construction of a contract of subscription.* A party in subscribing for the erection of a building for a university, agreed, that if a building should be erected within a given time worth a stipulated amount, he would give $400. It was not essential that the building should be *completed* within the time in order that the subscription should be payable. There is a great difference between erecting a building and completing one. A building may be said to be "erected," when the walls are up and the material on the ground to complete it.

8. In this case, the walls of the building, which were of brick, were up, and all the brick and stone work finished, except one of the gables, and the topping of

the chimneys, within the time specified. The heavy timbers and joists and studding were framed and in the building, but the roof was not on, nor were the sash or door frames, but were made, ready to be put in, and the window frames were already in; no floors were laid, but the materials to finish the building were on the ground. The building, in this condition, was regarded as "erected," within the meaning of the contract of subscription.

APPEAL from the Circuit Court of Knox county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was an action of assumpsit instituted in the Circuit Court on the 29th day of August, 1863, by the Ewing Female University against John Johnston, to recover the amount of a subscription made by the defendant for the erection of the university building.

The declaration contained the common counts and a special count upon the subscription paper, which was as follows:

We, the subscribers, promise and agree to pay to the trustees of the Ewing Female University, an institution of learning, to be located in the city of Knoxville, in the county of Knox and State of Illinois, and their successors and associates in office, the sum set opposite our names, for the purpose of erecting suitable and necessary buildings, and furnishing the same with the necessary books, maps, charts, philosophical and chemical apparatus; subscriptions payable in real estate; the same to be valued by three disinterested persons, to be selected by the trustees, and such real estate to be conveyed to the institution on or before the first day of September, A. D. 1858; and in default of making such conveyance, the amount of such subscriptions to be due in money.

Cash subscriptions to be due and payable in installments of 25 per cent. each, as follows: The 1st installment to be due on the first day of July, A. D. 1858; the 2d installment on the 1st day of January, A. D. 1859; the 3d installment on the first day of July, A. D. 1859, and the 4th and remaining installment on the first day of January, A. D. 1860.

Among other subscriptions, the following by the defendant:

"When a building shall be erected worth $10,000, I will give in real estate, if such building shall be erected in eighteen months, $400.

(Signed)         JOHN JOHNSTON.

The defendant pleaded the general issue, and several special pleas, which being adjudged bad on demurrer, he filed nine amended special pleas.

The eighth plea sought to put in issue the fact, that the plaintiff was not a body corporate at the time of the subscription. The ninth plea was *nul tiel corporation*, on which issue was taken. All the other special pleas alleged, in substance, that the only cause of action was on the subscription paper counted upon in the special count, and that the condition thereof, "when a building should be erected worth ten thousand dollars, to give in real estate four hundred dollars if such building should be erected in eighteen months," had not been complied with. A demurrer was interposed to all the nine amended special pleas, and sustained to all except the ninth.

The cause came on for trial upon the issue upon the plea *nul tiel corporation*, and the general issue.

The plaintiff offered in evidence the certificate of incorporation of the Ewing Female University, filed in the recorder's office of Knox county, which was as follows:

STATE OF ILLINOIS, \
 KNOX COUNTY, } ss.

We, the undersigned, being anxious of establishing an institution of learning, in the city of Knoxville, in said county, under and by virtue of an act of the legislature of said State entitled "An act for the incorporation of institutions of learning," approved January 26th, A. D. 1849, do certify and declare that said institution shall be known and called Ewing Female University, and that the same shall be managed and directed by fifteen trustees, viz.: P. H. Sanford, Cephas Arms, H. N. Keightly, John Eads, Leander Douglass, Zelotes Cooley, Alvah Wheeler, John G. Sanburn, O. B. Palmer, Wm. H.

Whitton, J. W. Carns, Edson Huggins, J. B. Smith, Abram Leightner and Hugh S. Woods, in which the following branches of literature and science are purposed to be taught, viz.: Algebra, Chemistry, History and Structure of Language, Antiquities, Mnemonics, Esthetics, Terminology, Nomenclature and Technicality, Geometry, Science of Government, Latin and Greek, Geology, Intellectual Philosophy, Natural Theology, Evidences of Christianity, French, German, Spanish, Rhetoric, Intellectual Philosophy, Trigonometry, Astronomy, Natural Philosophy, Conic Sections, Elements of Criticism, History of Literature, Logic, Analogy, Drawing, Painting and Embroidery.

Signed by John Eads and twenty-nine others. To which was attached the following certificate of acknowledgment:

STATE OF ILLINOIS, } ss.
  KNOX COUNTY,

I, Wm. McGowan, a justice of the peace in and for said county, certify that on this day personally appeared before me John Eads, Zelotes Cooley, Henry Arms, H. Knox Taylor, C. Waterberry, John G. Sanborn, P. H. Sanford, Leander Douglass, E. L. Phillips, Alvah Wheeler, Wm. C. Taylor, Geo. W. Wheeler, John T. Brewer, Silas Bruce, Cephas Arms, Wm. H. Whitton, J. W. Carns, E. Huggins, G. M. Ewing, Thomas S. Vaill, Miles Smith, Cyrus C. Palmer, J. B. Smith, H. N. Keightley, C. Corwin, William Arms, Chauncey K. Adams, O. B. Palmer, Hugh S. Woods and Abraham Leightner, whose names appear subscribed to the foregoing instrument of writing, and severally acknowledged the signing of the same to be their voluntary act and deed, for the uses and purposes therein set forth.

Given under my hand and seal this first day of February, A. D. 1858.

WM. McGOWAN, J. P. [seal.]

To the reading of which, in evidence, the counsel for defendant then and there duly objected, for the following reasons:

1st.   Because said certificate was not properly acknowledged, the certifying officer not stating that the persons acknowledging were personally known to him.

2d.   The signatures were not proved.

3d.   Because the certificate does not contain the number and designation of the *professorships* to be established, though the institution is of the rank of a university.

4th.   Because as defendant contends the certificate is not acknowledged by all the persons who have subscribed the same as corporators, but is acknowledged by only a portion of the same.

The court overruled said objections, and allowed said certificate to be read in evidence, to which the defendant excepted.

The plaintiff then offered and read in evidence a copy of the certificate of incorporation of Ewing Female University, certified by the secretary of State.

To the reading of which, in evidence, the defendant, by his counsel, objected, for the following reasons :

1st.   On the same grounds as already stated, on which the objections were made to the said certificate from the recorder's office of Knox county.

2d.   Because it contained erasures and interlineations.

Which certificate is the same in substance as the aforesaid certificate filed in the recorder's office of Knox county, except that instead of being certified by the recorder of Knox county, it is certified by the secretary of State, as follows, viz. :

UNITED STATES OF AMERICA,  }
    STATE OF ILLINOIS.        }

I, O. M. Hatch, secretary of State of the State of Illinois, do hereby certify that the foregoing is a true copy of the certificate of organization of Ewing Female University, filed ~~Sep. 26, A. D. 1863~~, ("February sixth, A. D. 1858") [interlined] and now on file in my office.

In witness whereof, I have hereunto set my hand and [L. S.]   affixed the great seal of State, at the city of Springfield, this 28th day of September, A. D. 1863.

O. M. HATCH, *Secretary of State.*

To the reading of which, in evidence, the defendant then and there objected.

The court overruled the objection, and permitted the said certificate to be read in evidence; to which exception was taken.

The plaintiff was then allowed to read in evidence, against the objection of the defendant, the act of 1859, incorporating the Ewing Female University.   Private Laws 1859, p. 333. The plaintiff also read in evidence the subscription paper declared upon, to which defendant objected.

It was proved that the subscription paper was signed by the defendant on the 15th of March, 1858; and on the 22d of March, 1862, he was requested to perform his contract, when he refused to pay the subscription in any manner.

The plaintiff then introduced *Z. W. Stevens*, who testified in reference to the time within which the building was erected, and the value thereof, as follows: I know the Ewing Female University building; I did the mason work on it; subscriptions for the institution were commenced in the first part of March or latter part of February, 1858; we located the site for the building March 15th, 1858; in June, 1858, I staked off the ground on which the building was to stand, and then commenced digging for the foundation in that month; I hauled the rock, and commenced laying the foundation in July, 1858; in the fall of 1858 I finished laying the first or basement story, except the water table; in June, 1859, I resumed the work on the walls, which I finished September 15th, 1859, except the east gable end, which I could not finish till the rafters were up; there were fifteen hundred brick which could not be put in till after the rafters were put up, and they were not laid till after September 15th, 1859; all the rest of the stone and brick work was done; the heavy timbers and joists and studding were framed and in the building; the building was worth between $10,000 and $12,000 on the 15th of September, 1859; I have worked at mason work ever since I was twelve years of age; I have been a contractor about thirty-five years; I am acquainted with the value of such work; the building was built for the

Ewing Female University, and is located in Knoxville, Knox county, State of Illinois, about eighty rods north of the court house.

On cross-examination by defendant's counsel, said Stevens testified as follows: I did all the stone and brick work on the building; the building was completed in the fall of 1860, except the porch; prior to June, 1859, I had the foundation of first story done, except the water table; the water table was put on before September 15th, 1850; I had thought the roof was framed before that time, but, on talking with Mr. Huggins, I think I may be mistaken in that; on the 15th of September, 1859, the roof was not up; the glass was not in, but the glass was purchased; the door-frames and the door were not in; the sash were not in, but were made and ready to be put in; the main frames were all ready to be put in; the window frames were all in ready for the sash; there was no floor except loose boards or planks, some of which were nailed to the building; no regular floors were laid; there were some five hundred or six hundred feet of lumber in and about the building, used for loose flooring and scaffolding; in this condition the building was worth between $10,000 and $12,000; I put up the east gable end some time in October of same fall; was a day and a half putting it up; in summer of 1860 I put up chimney tops; I built them myself; it took me twenty days to build chimney tops; I put them up in July or August, 1860; in my estimate I do not include materials on hand; most of the finishing lumber was on the ground—worth $1,000; all of the sand and plastering was on the ground; I have made an estimate of the cost of the building, and have it here; the result shown by it is the sum of $10,346.30; the entire building, after its completion, cost $18,000; the building was worth, September 15th, 1859, from $10,000 to $11,000; I think the glass was bought before September 15th, 1859; the whole building was completed the following summer of 1860.

The plaintiff here rested his case.

Thereupon the defendant, to maintain the issue on his part, introduced *Edson Huggins*, who, being sworn, testified: I

worked on this building in the summer of 1858; I had charge
of the carpenter work and did a good deal of it; I worked by
the day, and worked till it was finished; I worked a month or
so in summer, also in the fall of 1858, and commenced again in
the spring of 1859; the building was completed in the winter
of 1860 and 1861, and I worked on it till that time; on the
15th day of September, we had it up to the square; the gable
end was not finished; there was no timber bought for the roof;
September 15, 1859, the building was worth less than $10,000;
I have made an estimate and cannot make out the value or cost
over $9,500.

*Z. W. Stevens,* being recalled by the plaintiff, stated that the
estimate of brick in the building, upon which the witness Hug-
gins based his calculation, was too small.

This was the substance of the testimony in the case. Several
instructions were given for both parties, respectively, and some
asked by the defendant were refused; but it is not necessary
to present them here, as they involve no questions not clearly
presented in the opinion of the court. The jury found a ver-
dict for the plaintiff; a new trial was refused and judgment
entered on the verdict. The defendant thereupon took this
appeal. The principal questions arising under the assignment
of errors, are, *first,* as to the true construction to be given to
the condition attached to the subscription of the defendant;
*second,* whether the subscription, being made before the Ewing
Female University was incorporated, was valid and binding;
*third,* as to the sufficiency of the certificate of acknowledgment
to the certificate of incorporation, and herein, of the suffi-
ciency of the certificate of incorporation itself; *fourth,* the
admissibility of the same certificate from the office of the secre-
tary of State; and, *fifth,* whether the act of incorporation was
competent evidence.

Mr. T. G. FROST, for the appellant.

Mr. A. M. CRAIG and Mr. P. H. SANFORD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought in the Knox Circuit Court, by the appellee against the appellant to recover the amount of a subscription made by him prior to the incorporation of the company, but in contemplation thereof.

Besides the common counts the declaration counted on the subscription paper, setting it out in full.

The general issue was filed and several special pleas, which being adjudged bad on demurrer, the defendant filed nine special pleas, to all which, except the ninth, a demurrer was sustained.

The special pleas demurred to, were in substance that the only cause of action was on the subscription paper counted on, and that the condition thereof, "when a building should be erected worth ten thousand dollars, to give in real estate four hundred dollars if such building should be erected in eighteen months," had not been complied with. The ninth special plea was *nul tiel corporation*, on which issue was taken.

The questions presented on the record, arise out of the following assignment of errors:

The court erred in sustaining the plaintiff's demurrer to defendant's 2d, 3d, 4th, 5th, 6th, 7th, 8th and 10th amended pleas, and in each decision in overruling each and every of said pleas.

The court erred in admitting the certificate of incorporation offered by the plaintiff, recorded in the recorder's office of Knox county, in evidence.

The court erred in admitting in evidence the certificate of incorporation offered by the plaintiff, purporting to have been recorded in the office of the secretary of State, or the copy of the certificate from said secretary of State's office.

The court erred in admitting the evidence offered by the plaintiff and objected to by the defendant.

The court erred in excluding the evidence offered by the defendant.

The court erred in refusing to give defendant's instructions numbered 4, 6, 7, and each and every of them.

The court erred in modifying defendant's second instruction by the addition of the words "as to its exterior."

The court erred in giving the several instructions asked by the plaintiff and given by the court, and in his decisions as to each and every of them.

The demurrer was a special demurrer and properly sustained, because these special pleas, except the eighth, each and every one of them, amount to no more than the general issue. There is nothing in either of them, that the plaintiff was not bound to prove under that issue, and it must be presumed, it was proven. As to the eighth, it sought to put in issue the fact, that the plaintiff was not a body corporate, at the time of the subscription. The objection to this plea is obvious. It presented an immaterial issue. It has been held by this court, in several cases, that a subscription made in contemplation of an incorporation is legal, and the party making it bound to fulfill. *Cross* v. *Pinckneyville Steam Mill Co.*, 17 Ill. 54; *Tonica and Petersburgh R. R. Co.* v. *McNeely*, 21 id. 72.

What objection could exist to admitting in evidence the certificate of incorporation recorded in the recorder's office of the proper county, is not perceived. It is in strict conformity to the statute as we understand it. The act of 1849 does not require the same strictness as the conveyance act requires. In acknowledging deeds of conveyance, great opportunities are presented for fraudulent personation, hence the necessity that the person making the acknowledgment should be personally known to the officer taking it as the real person, and he should so certify.

Nor can we perceive any valid objection to admitting in evidence the certificate of incorporation from the office of the secretary of State. It is true it contained an erasure and an interlineation, as would appear by the copy furnished us, but as the original is not submitted to our inspection, we cannot say the court decided wrong in admitting it. From the appearance of the erasure and interlineation, we should not think it an alteration to be deemed very material. The secretary of State made a mistake in the date of filing the certificate, which he erased, and inserted the true date. In all substantial respects, it is in conformity to the statute.

The evidence offered by appellee to which appellant objected, besides the above certificates, was first, an act of the legislature incorporating the Ewing Female Seminary. No specific objection is pointed out, and in the absence of any, it must be held, as an act of the legislature, competent evidence. Next, the subscription paper was objected to generally, without any specification. As that was declared on as an instrument signed by the appellant, he should have denied its execution under oath. Not having done so, it was admissible, of course.

We cannot find, on a close inspection of the record, that the court, in any stage of the cause, excluded evidence offered by the appellant.

The important, and really the only question in the case, arises on the construction which should be placed on appellant's subscription. It differs from that of every other subscriber, and is special, as follows : " When a building shall be erected, worth ten thousand dollars, I will give in real estate, if such building shall be erected in eighteen months, four hundred dollars."

The instructions asked by the appellant are all on the hypothesis that a building should be *completed* within eighteen months, worth ten thousand dollars. Such is not the terms of the contract, nor the intention of the parties, as we gather from the words used. There is a great difference between erecting a building and completing one. A building may be said, without doing violence to language, to be erected when the walls are up and the material on the ground to complete it. It may be, the appellant's subscription, if paid, would have gone far towards its full completion, and by his default it was not completed.

The evidence shows a building erected worth more than ten thousand dollars, and within eighteen months after the appellant made his subscription, and that the materials were on the ground, at hand, to make the building so erected, complete. On the theory adopted by the court, and which we think was the correct one, the instructions on both sides were properly

disposed of, and as given, presented the law of the case fairly and fully to the jury.

There being no such errors as have been assigned, the judgment must be affirmed.

*Judgment affirmed.*