## ANDROS B. STONE
### *v.*
## THE GREAT WESTERN OIL COMPANY.

41   85
127   340
41   85
44a   641

41   85
202   ⁵133

1. BURDEN OF PROOF — *in suit by a corporation — under plea of nul tiel corporation.* In a suit by a corporation upon a call on a subscription to the capital stock of the company, under the issue on the plea of *nul tiel corporation,* the *onus* is upon the plaintiff to prove its corporate existence.

2. CORPORATION *under the general law — proof of its corporate existence — what is sufficient.* Where the corporation claims to have organized under the general law of 1857, authorizing "the formation of corporations for manufacturing purposes," it is not necessary to the proof of its corporate existence, under the plea of *nul tiel corporation,* that it should appear, the duplicate of the writing by which the association was constituted was filed in the office of the secretary of State, as required by the act.

3. SAME — *whether filing the duplicate is necessary.* It has been *held,* that such a requirement is directory only, and the omission to file the duplicate would not defeat the organization.

4. SAME — *in what proceeding such an omission might be availing.* It has also been *held,* that, when a company had taken all the steps to be incorporated under the general law of 1849, but had omitted to file the certificate of incorporation in the office of the secretary of State, such a non-compliance with the statute might sustain a *quo warranto* on behalf of the people and oust the cor-

porators from the exercise of their franchise, but it does not necessarily follow that it is not, as to third persons, a corporation.

5. PRACTICE — *when the specific objection to evidence must be stated on the trial.* If an objection to evidence which can be obviated by further proof, be not specifically made on the trial, it will not avail as a ground for reversing the judgment.

6. So in a suit by a corporation, under a plea of *nul tiel corporation*, the plaintiff offered in evidence a paper purporting to be a license, such as is required by the general law under which the plaintiff claimed to have become incorporated, but such paper was without signature or seal, it being agreed by the parties that the proper clerk, whose testimony was waived, would swear that a license issued in the form of the copy thus offered. The defendant made no specific objection, but a general one only, to the paper. It was *held*, the specific objection should have been made, as the original might have been produced or its absence accounted for.

7. SUBSCRIPTION *to stock — calls thereon — when legally made.* Where the contract of subscription to the stock of a company which is to be incorporated under the general law, provides for the payment of calls thereon " in conformity with the general incorporating law of the State, and the by-laws of the company made under the same," the amount for which a call may be made will not necessarily be controlled by the general law, if the by-laws prescribe a different rule in that regard.

8. SAME — *when the party upon whom a call is made is estopped from ques-tioning its regularity.* Even where a call on such a subscription is improperly made for the whole amount, the party upon whom the call is made ought to be estopped from objecting to the irregularity by the fact that he was a director in the company, and co-operated with the other directors in making the order, and also participated in a prior meeting of the stockholders at which the directors were instructed to make the order for such call.

9. SAME — *of the consideration and whether there is a promise.* A subscription to the stock of a company in contemplation of its becoming incorporated, to accomplish any legitimate object, is a valid contract between the parties, supported by a sufficient consideration.

APPEAL from the Superior Court of Chicago; the Hon. VAN H. HIGGINS, Judge, presiding.

This was an action of assumpsit brought in the court below by the Great Western Oil company against Andros B. Stone, to recover the amount of a call on the subscription of the defendant to the capital stock of the company, in contemplation of its becoming incorporated under the act of February

18, 1857, authorizing "the formation of corporations for manufacturing, mining, mechanical or chemical purposes."

The defendant pleaded the general issue and *nul tiel corporation.* The cause was tried before the court without a jury.

The plaintiffs, to support the issue on their part, gave in evidence the contract of subscription, as follows:

"GREAT WESTERN OIL COMPANY, CHICAGO, ILL.

"CAPITAL STOCK, $200,000.

"We, the subscribers, agree to take the number of shares of capital stock in the Great Western Oil company set opposite our names, respectively, and to pay the calls upon the same in conformity with the general incorporating law of the State of Illinois, and the by-laws of the company made under the same:

B. F. Pond, fourteen hundred shares, March 15, 1857.

Geo. Griswold, by B. F. Pond, eighty shares.

J. S. Holbrook, five shares.

James M. Mosley, five shares.

Edward Leonard, by N. F. Curryll, five shares.

N. F. Curryll, five shares.

S. L. Foster, ten shares.

James L. Lamb, thirty shares.

J. Condit Smith, by B. F. Pond, forty shares.

Henry Smith, Chicago, forty shares, April 3d, 1857.

A. B. Stone, Chicago, twenty shares."

Also, a certain certificate filed with the clerk of the Circuit Court of Cook county, as follows:

"These presents certify, that Henry Smith, Andros B. Stone, James L. Lamb, Barrizillia F. Pond, together with others, are desirous of founding an incorporated company under and by virtue of an act of the legislature of Illinois, entitled 'An act to authorize the formation of corporations for manufacturing, mining, mechanical and chemical purposes,' approved February 18, 1857. Said incorporated company to be named the 'Great Western Oil Company,' to be engaged in the man-

ufacture of oil, with a capital stock of two hundred thousand dollars, divided into two thousand shares of one hundred dollars each, and to continue in existence for fifty years from the date of this certificate; the operations of the said company to be carried on in the city of Chicago, Cook county, Illinois, and its board of directors to consist of seven members, and for the first year to be composed of the following named persons: Henry Smith, Andros B. Stone, James L. Lamb, John Evans, Benjamin F. Carver, John C. Smith and Barrizillia F. Pond.

"The subscribers therefore pray that a license may issue according to law.

"CHICAGO, April 2, 1857.

(Signed)                    "HENRY SMITH,
                            "B. F. POND,
                            "A. B. STONE,
                            "JAMES L. LAMB."

"STATE OF ILLINOIS, ⎱ ss.
   "COOK COUNTY,    ⎰

"On the second day of April, in the year of our Lord one thousand eight hundred and fifty-seven, personally appeared before me, Gideon W. Davenport, notary public, in and for the city of Chicago, in the county of Cook, and State of Illinois, the above named Henry Smith, Andros B. Stone, James L. Lamb, Barrizillia F. Pond, known to me, and who subscribed the foregoing certificate, and acknowledged that they executed and subscribed the said certificate freely and voluntarily, for the uses and purposes therein set forth.

"Witness my hand and notarial seal, the day and year above written.

                            "GIDEON W. DAVENPORT,
[SEAL.]                              "*Notary Public.*"

Plaintiff then offered in evidence, and asked to read to the court, a certain paper in writing, purporting to be a license. The circumstances under which this paper was offered in evidence, as stated by the judge who tried the cause, were these:

" The counsel for the plaintiff held in his hands a certificate and form of license, without signature or seal. The attorney agreed to dispense with the testimony of the clerk of the Circuit Court, in regard to the filing of the certificate, and, I understood it, in regard to issuing of the license in the form which was then presented by the plaintiff's attorney. The attorneys agreed to waive the testimony of the clerk of the Circuit Court, and admitted that the clerk would swear that the certificate was duly filed at the date that it purported to be filed, and that thereupon a license issued in the form of the copy presented to the court. No objection then being made for want of a seal, or any other specific objection, but a general one only, the court admitted the testimony."

To this ruling the defendant excepted. Thereupon plaintiff's counsel read said paper, which is in words and figures following, to wit:

" Whereas, in conformity with the provisions of an act of the legislature of Illinois, entitled, 'An act to authorize the formation of corporations for manufacturing, mining, mechanical, and chemical purposes,' approved February 18, 1857, a certificate, duly executed and acknowledged by Henry Smith, Barizzillia F. Pond, Andros B. Stone, and James L. Lamb, according to the provisions of said act, has been this day filed in the office of the clerk of the Cook county Circuit Court, and a duplicate thereof filed in the office of the secretary of State:

Now, therefore, under and by virtue of the authority in and by said act granted and conferred, I, William L. Church, clerk of the said Cook county Circuit Court, do hereby by these presents, license and empower the said Henry Smith, Barrizillia F. Pond, Andros B. Stone, James L. Lamb, and others who may be associated with them, to organize an incorporated company in conformity with the provisions of said act, to be named the ' Great Western Oil Company,' to be engaged in the manufacture and sale of oil, with a capital stock of two hundred thousand dollars, divided into two thousand shares of one hundred dollars each, and to continue in existence fifty years from the

date of said certificate, to wit: the second day of April, in the year one thousand eight hundred and fifty-seven. The operations of said company to be carried on in the city of Chicago, Cook county, Illinois, and its board of directors to consist of seven members, who for the first year shall be, Henry Smith, Andros B. Stone, James L. Lamb, Benjamin F. Carver, John Evans, John C. Smith, and Barrizillia F. Pond.

" In testimony whereof, I have hereunto set my hand and the seal of the said Cook county Circuit Court, this third day of April, in the year of our Lord one thousand eight hundred and fifty-seven."

It was admitted that the file dates marked on said certificate, and on the paper writing last mentioned, are the correct dates on which the said certificate and paper writing were filed.

*Matthew Taylor* testified on behalf of the plaintiff: Was in the employment of plaintiff since April 2, 1857, down to April 10, 1858, in Chicago, as secretary and treasurer of the company; defendant, Stone, was present at all the meetings of directors and stockholders during the time I was secretary, which were held at the office of the company in Chicago, April 2, 1857, April 3, 1857, April 4, 1857, July 3, 1857, April 7, 1858, April 8, 1858, April 13, 1858; I cannot say what was said by defendant, and refer to the "book of records" for what was done; I cannot say that the defendant, Stone, wrote any letter or letters in respect to his subscription as secretary of the company; I wrote him on the 14th of November, 1857, touching his subscription, a copy of which is as follows:

" 14 Nov. 7.

" A. B. STONE, Esq. :

" *Dear Sir* — You are hereby notified that the balance of your subscription to the stock of the Great Western Oil company, amounting to fifteen hundred dollars, is past due.

"Immediate payment is respectfully requested.

" By order of the president.

" MATT. TAYLOR, *Secretary.*"

Defendant made payments of money to plaintiff as follows: June 16, 1857, $250; June 22, 1857, $350; and it appears, from the cash book in my handwriting, that defendant made further payments as follows: April 18, 1858, $103.48; May 1, 1850, $200; Oct. 11, 1858, $26.95; all of which sums were paid on account of defendant's subscription to the capital stock of the company; the defendant was kept thoroughly advised by me, either orally or in writing, of the condition of the plaintiff's affairs, and of the action of the board of directors, he being present at all the meetings; I gave notice of calls of stock subscription, both orally and in writing, repeatedly; a preliminary meeting of the proposed stockholders was held April 2, 1857, when a form of application for the license was submitted to the meeting. A meeting of the same persons was held April 3, 1857; a license which had been obtained and submitted, and by-laws adopted and officers elected and resolutions adopted.

I heard conversations with defendant touching his subscription on several occasions at Chicago, during the year 1857, after the organization of the company, April 3, 1857, the substance of which conversations was, that it was necessary that he should pay up his subscription without delay, and he said he would do so as soon as he possibly could.

Defendant acted as vice-president of said company, but I do not now remember any particular or definite act which he did in such capacity.

It was then proven, that, at a regular meeting of the board of directors, the following resolution was adopted:

"*Resolved*, That all unpaid stock subscriptions be paid in to the treasurer of this company on or before the first day of May next, and that the secretary of the company be instructed to communicate a copy of this resolution to the delinquent stockholders."

It was here admitted, that defendant was present and took part in many, if not all of the meetings of the directors of the company, and in the meeting which passed the said resolution.

*James Clapp*, who had been the secretary and treasurer of the company since April 10, 1858, testified, that he gave notice to the defendant on the 13th of April, 1858, of the adoption of the foregoing resolution, and requested him to pay the balance of his subscription; that there had been no change of officers since 1858, and that no payment had been made by defendant since that time; that the balance due by defendant on April 18, 1858, was $1,169.57.

Upon this evidence the court found the issues for the plaintiff, and assessed the damages at $1,169.57, and entered a judgment accordingly, from which the defendant took this appeal.

Messrs. Monroe & McKinnon, for the appellant.

Messrs. Gookins & Roberts, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

The questions raised on this record by appellant are: First, that the plaintiffs did not, under the plea of *nul tiel* corporation, establish their corporate existence by showing a strict compliance with the provisions of the statute; second, if the defendant was liable to pay calls made upon him, those calls must be made in conformity with the statute, and one call only, and that for the whole amount due on the stock subscription, is not sufficient; and third, that the paper declared on shows on its face that it was without consideration, and shows no promise.

In support of the first point, appellant insists that the plea of *nul tiel* corporation, put the *onus* of proving the corporate existence of the plaintiffs on them, and the fact must be established by showing a strict compliance with the statute.

It seems this was a corporation formed under the general law, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," approved February 18, 1857.

The *onus* was certainly on the plaintiffs to establish their corporate character, and we think they have removed the burden by the proof.

The main objection taken by appellant to the proof is, that the proposed associates did not file in the office of the secretary of State a certificate in writing as required by the first section of that act. There are two requirements specified in that section, the first that the writing by which the association shall be constituted, shall be signed and acknowledged before some officer competent to take the acknowledgment of deeds, and shall be filed in the office of the clerk of the Circuit Court, in the county in which the business is to be carried on, and *also* in the office of the secretary of State.

The third section provides, when the certificate shall have been filed with the clerk of the court, and a duplicate thereof filed in the office of the secretary of State, the clerk shall issue a license to the persons who shall have signed and acknowledged the same, on the reception of which they and their successors shall be a body politic and corporate in fact and in name, by the name stated in such certificate, and by that name shall have succession, and be capable of suing or being sued in any court of law or equity of this State. Scates' Comp. 762.

There was no direct proof that a duplicate of this certificate was filed in the office of the secretary of State, but on the presumption that every public officer performs the duties enjoined on him by law, it is a fair inference from the fact that the clerk issued the required license, for the law declares a license shall issue only when the duplicate is filed in the secretary's office, but in the case of *Cross* v. *Pinckneyville Mill Co.*, 17 Ill. 54, this court held that requirement to be directory only, and the omission to file the duplicate would not defeat the organization.

In *Marsh* v. *Astoria Lodge*, 27 Ill. 421, it was held, that an organization in fact, and user under it, was sufficient to show a corporation *de facto*, under the plea of *nul tiel* corporation,

although there might have been irregularities or omissions in the first instance.

In *Prest. and Trustees of Mendota* v. *Thompson*, 20 Ill. 197, it was said that to prove the existence of a corporation, it was sufficient to produce the charter and prove acts done under it and in conformity with it.

In *Baker et al.* v. *The Admr. of Backus*, 32 Ill. 79, it was held when a company had taken all other steps to be incorporated under the general law of 1849, but had omitted to file the certificate of incorporation in the office of the secretary of State, such a non-compliance with the statute might sustain a *quo warranto* on behalf of the people, and oust the corporators from the exercise of their franchise, but it does not necessarily follow that it is not, as to third persons, a corporation; and in the same case, it was said, the allegation that a company, claiming to have been incorporated and acting as such, has never been legally organized as a corporation, or has never existed as such, can be ascertained in no other way than by a direct proceeding by *scire facias*, or by information in the nature of a *quo warranto* in a court of law. The first is proper when there is a legally existing body capable of acting, but who have been guilty of an abuse of the power intrusted to them; and the latter, by *quo warranto*, when there is a body corporate *de facto* who take upon themselves to act as a body corporate, but from some defect in their constitution, they cannot legally exercise the power they affect to use. See also *Tarbell* v. *Page*, 24 Ill. 46.

These references dispose of the objection to the proof of a corporation.

The objection to the evidence itself was not well taken. When the license was offered in evidence, it was treated as the original. No specific objection was made to it. Had it not been so treated, the original might have been produced or its absence accounted for.

It has been so often *held*, by this court, that objection to evidence must be specific, that it has become the doctrine of this court. The rule is, that the party making the objections

must point out specifically, those insisted on, and thereby put the adverse party on his guard and afford him an opportunity to obviate them. *Sargeant* v. *Kellogg*, 5 Gilm. 273; *Swift* v. *Whitney*, 20 Ill. 144; *Buntain* v. *Bailey*, 27 id. 410, and in *Conway* v. *Case*, 22 id. 127, and in *Davis* v. *Ransom*, 26 id. 100, this court said, parties should make specific objections in the Circuit Court to the introduction of evidence, if the propriety of its introduction is to be questioned in this court, and in the case of *Gilham* v. *State Bank*, 2 Scam. 248, it was *held*, if an objection which can be obviated by further proof, be not taken, or is not insisted on at the trial, it will not be received as the ground for a motion for a new trial. There having been no specific objection to this paper purporting to be a license, it was properly in evidence, and operated to the same extent, as proof, that a charter of incorporation would operate.

The next point made by appellant is, that there was no legal call for the subscription of stock made on him, — that, by the instrument on which the suit is brought, he agreed to pay calls in conformity with the general incorporation law above cited, the eight section of which provides that all subscriptions to such stock shall be payable in such sums and at such times as the board of directors may require, and that one call for the whole amount of the subscription is not conformable to the law. It will be seen by reference to the subscription paper, that appellant agreed to do something more in this respect. He agreed to pay the calls upon the stock not only in conformity with this law, but also in conformity with the by-laws of the company.

We do not know what the by-laws of the company were on this subject of calls, but it is not a forced presumption that they authorized this call, for the officers of such companies are presumed to act, if not in obedience, certainly not in hostility to their own laws. But whether this presumption be indulged or not is not material, since the secretary of the company, Mr. Taylor, proved that appellant paid assessments prior to the call set out in the declaration, and that he gave notice of calls of stock subscription both orally and in writing repeatedly.

Appellant's original subscription was for twenty shares, at one hundred dollars each, making two thousand dollars.

The recovery against him amounts to eleven hundred and sixty-nine dollars fifty-seven cents, so that the inference is irresistible that he paid the difference between these sums, as calls before suit brought, and, in truth, it is so established by the testimony of Taylor and Clapp who acted as secretary and treasurer of the company. And the evidence shows that appellant was present at the meeting of April 10, 1858, when this call was made, that he had notice of it, and made no objections. This is not like the case of *Spangler* v. *N. Ill. & S. Ind. R. R. Co.*, 28 Ill. 278, for the reason, in that case, by the contract of subscription, Spangler was to pay only in certain proportions. In this case the appellant was to pay according to the general law and the by-laws of the company, of which he was vice-president. By the general law, section 8, it is provided that the subscriptions to stock shall be payable in such sums and at such times as the board of directors may require, and the declaration alleges that they did by vote require the balance of all subscriptions due to be paid by a certain day.

But, as contended by appellee, if, in this case, the stock had been ordered to be paid wholly under one call, appellant ought to be estopped from objecting to the irregularity, as he co-operated with the other directors in making the order and also participated in the meeting of the stockholders a few days before, at which the directors were instructed to make the order for this call. These facts were not in Spangler's case.

The case of *Erie and W. Plank-road Co.* v. *Brown*, 25 Penn. 156, is on the point here discussed.

The remaining objection, that the subscription paper shows on its face no consideration and no promise, and therefore not affording a ground of recovery, is answered by the numerous cases decided by this court. *Robertson* v. *March et al.*, 3 Scam. 198 ; *Cross* v. *Pinckneyville Mill Co.*, *supra ;* *Tonica and Petersburgh R. R. Co.* v. *McNeely, Admr.*, 21 Ill. 71 ; *Prior et al.* v. *Cain*, 25 Ill. 292 ; *Griswold* v. *Trustees, etc.*, 26 id. 41.

These cases show that such subscriptions are binding, and can be recovered by actions at law.

There being no error in the record, the judgment is affirmed.

*Judgment affirmed.*