## John S. Thompson

### *v.*

## The Board of Supervisors of Mercer County.

40   379
23a  497
40   379
51a  366

1. Subscription *for public purposes—power of public authorities to make the contract.* Under an act providing for an election upon the question of the removal of a county seat, and providing that in the event of the vote being in favor of removal, the board of supervisors shall erect or *procure* suitable buildings for the public offices, and a suitable place for holding courts, the board of supervisors may, in their official capacity, accept a contract of subscription from individuals, to be paid on condition the vote shall be favorable to removal, for

the purpose of aiding in the erection of the public buildings contemplated by the act, and such a subscription will be valid and binding upon the parties making it.

2. FORMER DECISION. The case of *The County Commissioners of Randolph county* v. *Jones*, Breese, 237, discussed in reference to its bearing on this question.

3. SUBSCRIPTION *for public purposes—of the consideration to support it.* Any benefit accruing to a promisor, is a sufficient consideration to support the promise.

4. So where the owner of land at and adjacent to the contemplated place of removal of a county seat, makes a subscription to be paid upon the condition that, at an election which is to be held under an act in relation to that subject, the vote shall be in favor of removal, for the purpose of aiding in the erection of public buildings contemplated by the act, and the property would be greatly enhanced in value by the location of the seat of justice upon it, that would be deemed a sufficient consideration, so as to make the promise binding, in the event of removal.

5. And generally, in regard to the binding effect of voluntary subscriptions of this kind, it may be said, when advances have been made, or expenses or liabilities incurred by others, in consequence of such subscriptions before any notice of withdrawal, this should be deemed sufficient to make them obligatory, provided, the advances were authorized by a fair and reasonable dependence on the subscriptions.

6. So where the party making such a subscription, published it to the people who were to vote upon the question of the removal of the county seat, and in a published address to them, urged that as showing that the people would not have to bear the burden of the erection of public buildings, as a result of the vote being for removal, it might with propriety be said that the expenses of the election and liabilities consequent thereon were made in consequence of such subscription, and for that reason it should be binding.

7. It is further stated as a correct principle, that in general, subscriptions on certain conditions, in favor of the party subscribing, are binding where the acts stipulated as conditions are performed.

8. So, where the subscription was made on condition that the county seat should be removed to a certain place, and that place was, at the time, the property of the party making the subscription, the condition was in his favor ; and the condition being consummated by the removal and location of the county seat at the contemplated place, there is no reason, under the rule cited, why his subscription should not be binding.

APPEAL from the Circuit Court of Mercer county ; the Hon. M. WILLIAMSON, Judge, presiding.

The opinion of the court contains a full statement of the case.

Mr. J. S. THOMPSON and Messrs. J. R. & I. N. BASSETT, for the appellant.

Messrs. GOUDY & CHANDLER, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

In April, 1857, the general assembly passed an act authorizing an election to be held in the several townships of Mercer county, at which the legal voters of the county might vote for, or against, the removal of the seat of justice of that county, from the town of Keithsburgh to the town of Aledo; and also provided, that if such election should be decided in favor of the removal, then it should be the duty of the board of supervisors to erect or procure suitable buildings for the public officers of the county, and also a suitable place for holding courts in Aledo, and when such buildings were erected or procured, the offices, records, etc., of the county should be removed to Aledo, and the courts be there held. (P. 91, Laws of 1857.)

In August, 1857, an election was held resulting in favor of the removal.

Previous to the election, in June, 1857, the following writing was circulated and signed, among others by the appellant:

"The undersigned citizens of Mercer county and State of Illinois, do hereby severally promise to pay to the board of supervisors of said county, for the use of said county in the erection of public buildings in the town of Aledo, the sum of money by us hereto subscribed, whenever the same may be demanded for that purpose. Provided, the people of said county, at the election to be held on the first Monday of August next ensuing, shall decide in favor of the location of the county seat thereof at the town of Aledo. *The said location being the consideration of the foregoing promises.* Dated this 30th day of June, A. D. 1857. Levi Willits and John S. Thompson, three thousand dollars ($3,000)."

The seat of justice having been removed to Aledo, the amount of this subscription was demanded of the appellant, which he refused to pay, whereupon this action was brought.

Appellant filed a demurrer to the declaration, which was overruled. He then filed the plea of the general issue, a plea denying the delivery and acceptance of the agreement declared on — a plea denying a demand by plaintiff, and a plea setting forth that the only and sole consideration for the making of the agreement declared on, was, that the people of the county should decide, at the election, to locate the county seat at Aledo, and avers that the consideration was illegal and void, and the agreement without consideration.

Issues were joined on the first three pleas, and a demurrer to the fourth plea, which was sustained by the court. The cause was tried on the issues of fact by the court, and a verdict found against the appellant for three thousand dollars, for which judgment was entered.

The cause comes here by appeal, and it is assigned for error, sustaining the demurrer to the fourth plea; admitting improper testimony on behalf of appellee; in rendering judgment against appellant.

The points made by appellant are, that the board of supervisors, as a county board, did not accept the subscription until after the vote was taken, and without an acceptance by them before the vote was taken to remove the county seat, the subscription was only a proposition, and not binding.

We do not deem these material facts, the question being, what was the effect of the subscription? was it of any binding effect upon appellant?

Appellant insists it had no such effect, because the board of supervisors had no authority to accept the proposition, or enter into any such contract. That it was their duty to provide for the location of the county seat at Aledo, in the event the vote of the people was cast in favor of that place, without any promise of help from any one in the shape of subscription for building purposes or otherwise, and cites, in support of this

view, the case of *The County Commissioners of Randolph County* v. *Jones*, Breese, 237 (new ed.)

That case is in some respects like this, but not altogether. The decision there, was placed on the grounds that the county commissioners, as such, had no right to make the agreement, except as a court, and at some term of the court, and that there was no mutuality in the contract, and that a promise to the commissioners to pay money for the performance of an act they were obliged by law to perform, in the discharge of their official duties, was against public policy, and therefore void. WILSON, Ch. J., placed his decision expressly upon the ground that the contract was not entered into by the county commissioners as a court, clearly implying if it had been, it would have been binding on both parties. LOCKWOOD, J., gave no opinion. The decision was by a divided court, and not by a majority of the court, there being two against two, and the case went off on the agreement of the parties to discontinue the suit if the court should decide Jones was not liable on his subscription. The decision of the majority was, that he was not liable, for the reason the contract was not made with the commissioners as a court, and their act was, therefore, extrajudicial and void. In this case, the contract was made with the board of supervisors in their official capacity, and under the authority of the act of 1857, for, by that act, they were required, if the vote was in favor of a removal, to erect or *procure* suitable buildings for the public officers, and a suitable place for holding courts. Would not a promise in writing to the board of supervisors made before the vote on the removal was taken, that the promisor would provide such a building if the vote was in favor of a removal, be binding upon him? It may be said there was a want of consideration for this promise, but if it was shown, as in this case, that the promisor owned the land, or a large portion of it, at the contemplated place of removal, and adjacent, and that the property would be greatly enhanced in value by the location of the seat of justice upon it, would not that be deemed a sufficient consideration, so as to make the promise binding in the event of the removal? The

doctrine we believe is, that any benefit accruing to the promisor, is a sufficient consideration to support a promise. 1 Parsons on Con. 357, citing *Pillows* v. *Microp*, 3 Burr. 1663; *Nerot* v. *Wallace*, 3 T. 24; *Forster* v. *Fuller*, 6 Mass. 58.

On the general question how far voluntary subscriptions of this kind are binding, the law has fluctuated very much, and is not now regarded as settled. Where advances have been made or expenses or liabilities incurred by others in consequence of such subscriptions before any notice of withdrawal, this should, on general principles, be deemed sufficient to make them obligatory, provided the advances were authorized by a fair and reasonable dependence on the subscriptions; and this rule seems to be well established. 1 Parsons on Con. 378.

Testing this case by this rule, it will be seen, that after the subscription was made and filed in the county clerk's office on the 5th of February, 1857, appellant came into the office and got a certified copy of it, and published it in the "Aledo Weekly Record," and also in a circular which was distributed before the election in August.

This paper is styled "An address to the voters of Mercer county;" and sets forth that a vote is about to be taken to decide a question that will affect their interests in all time to come — the question of removing and permanently locating the county seat, etc. And in order to release the county of all burden in the matter of election, a sufficient amount of money had been deposited with the treasurer of the county, to pay the expense of election.

And also, that $7,000 dollars had been subscribed by several public-spirited individuals to be used in the erection of public buildings, provided there should be a vote for removal, etc.

Sets forth copy of bond from Levi Willits and John S. Thompson to the board of supervisors, obligating themselves to convey block 40, in Aledo, to said county for the use of said county, if the county seat should be removed, etc.

Sets forth a copy of the said subscription, and a copy of the county clerk's certificate that the same had been filed on the 6th of July, 1857.

That it is not true that the removal of the county seat will be burdensome; that the people can control the matter of taxes, and say how much, if any, tax shall be imposed.

That the people have already a reliable pledge of more than $7,000, given for public buildings, and with their present premises have the amount of more than $10,000.

That the erection of a court-house will not cost the people a single *sou.*

That the amounts donated are reliable, and the Supreme Court has decided that all such subscriptions are valid and binding.

This address was in evidence without objection, and contains the arguments of a large property holder at the contemplated county seat, to induce the people to vote for a removal, and who can say it did not influence them to incur the expense of an election and other liabilities consequent thereon? May it not with propriety be said, that these expenses and liabilities were made in consequence of this subscription? Wherein, then, does the case differ from that of *Robertson* v. *Marsh,* 3 Scam. 198, and *Bryant* v. *Goodnow,* 5 Pick. 228; *Macon* v. *Sheppard,* 2 Humph. 335; *University of Vermont* v. *Bull,* 2 Verm. 48, and the other cases cited in note of Parsons on Contracts at page 378 before referred to?

It is further stated as a correct principle, that, in general, subscriptions on certain conditions, in favor of the party subscribing, are binding, when the acts stipulated as conditions are performed (id. 379). By reference to the subscription of appellant, it will be seen his subscription was on condition that the location of the county seat should be at Aledo, which is proved to have been at that time his property. The conditions then, were in his favor, and as the act of removal and location of the county seat at Aledo has been consummated, there is no reason, under the rule cited, why his subscription should not be binding. *Williams College* v. *Danforth,* 12 Pick. 541.

We cannot, in any light in which this case has been presented, otherwise regard the subscription than as a binding agreement, which the appellant is bound to perform, and, accordingly, affirm the judgment.        *Judgment affirmed.*