## Doane v. Chicago City Railway Co.

1. STREETS OF A CITY—*For Public Use.*—The streets of a city are for the use of the public in whom is vested the right of control over them.

2. STREETS—*Public Interests in.*—Those who represent the public, as the legislature of the State or the authorities of cities, must, in whatever they do in respect to public ways and grounds, be guided solely by a regard for the public interests; but they may and frequently do grant to individuals special rights and privileges in respect to such ways and grounds, doing so because it is believed thereby the public interests will be conserved.

3. CITY OF CHICAGO—*Control Over Its Streets.*—The city council of Chicago has only such control over its streets as has been given to it by the State.

4. STREETS—*Effect of Legislation.*—In refusing to give the municipality authority to permit horse railways to be constructed in its streets the State did not impose upon the owners of abutting property any trust, or charge them with discharge of any public duty.

5. STREETS—*Trust Vested in the City with Respect to Their Use.*—The State has vested in the city a trust in respect to the use of its streets, but it can not vest in one or more private property holders the power to exercise in the interest and for the benefit of the public a discretion as to what use should be made of the public streets.

6. STREETS—*Right of Owners of Property Fronting on Same.*—There is in the framework of our State no warrant for bestowing upon property owners, as such, any of the functions of government.

7. STREETS—*Adjacent Owners—Character in Which They Act.*—If the owners of property abutting upon a street give or withhold their consent to the construction of a street railway before their doors they do so not in any public capacity, as servants or agents of the public, but as individuals, having regard solely to their individual interests, neither acting collectively nor in concert, or after discussion and consideration, but independently, and with reference, each for himself, to what he deems for his personal interest.

8. STREETS—*Expediency of Giving Power to Property Owners.*—The expediency of giving to property owners, as such, the power to prevent the devotion of public streets to such uses as the public good may require, is not a matter for the consideration of a court.

9. STREETS—*Adjacent Property Owner—Consent—Compensation.*— No property owner can be compelled to give his consent to the use of a street upon which his property abuts for a horse railway. He can not hold or exercise a trust as to other property owners, because no owner has any property right in the restriction or devotion of the street to certain public uses. Each owner is entitled to compensation if his property is damaged ; and the consent by one owner to the laying of railroad tracks does not affect the claim of another for damages.

10. PUBLIC POLICY—*Contract for the Withdrawal of Opposition to Legislation.*—Where private property interests are involved and the opposition to a bill pending before a legislature is based upon contemplated damage to private property, a contract in consideration of the withdrawal of opposition, to pay an indemnity for the injury anticipated from the passage of the act, there being no concealment of the arrangement from the legislature or public, and no purpose to mislead, is valid and not opposed to public policy.

11. PUBLIC POLICY—*Contracts Otherwise Valid, etc.*—A contract otherwise valid is not, or does not become void because it will, by its abuse, operate to the public injury.

12. PUBLIC POLICY—*Contracts for Carrying Out Legislation.*—Contracts for the carrying out of which legislative action is necessary are not for that reason opposed to public policy and will be enforced.

13. STREETS.—*Tendency of the Consent of Adjacent Owners.*—The consent of property owners to the laying of street railroad tracks in a street, the fee of which is in the public, has no tendency to impose burdens upon any of the other owners of property upon the street.

14. STREETS—*Adjacent Owner—Compensation.*—When the property of an abutting owner is damaged by the construction of a horse railroad in front of his premises he is, under the provisions of the constitution, entitled to compensation. Thinking that such construction would be a damage to him he has a right, before, and as a condition of giving his consent to the laying of such tracks, to bargain and sell the right to damage his property, for the largest sum he can obtain.

15. DAMAGES—*Liquidated, and Penalties.*—Where an obligation provided that if the obligor should " violate the conditions of this obligation the sum of one hundred thousand dollars shall thereupon become due and payable to the said obligee, his heirs, executors, administrators or assigns, as liquidated damages therein," etc., *it was held* that the sum nominated was not in law liquidated damages, but merely a penalty.

16. STREET RAILROAD COMPANIES—*Corporate Charter.*—A street railroad company is, in many respects, a personal and private corporation, existing and managed for the benefit and profit of its shareholders, but it is also, in other respects, a public corporation, having public duties to discharge.

Doane v. Chicago City Ry. Co.

17. STREET RAILROAD COMPANY—*Power to Limit Its Sphere of Action.*—A street railroad company can not, by a contract with an individual, limit the sphere of its action, and contract that it will not in the future do that which the public interests may demand.

18. STREET RAILROAD COMPANY—*Power To Limit Its Sphere of Action—Illustration.*—The Chicago City Railway entered into an obligation " that it will not hereafter build, construct or lay any other or more than a single track railway, without switch or switches, turn-out or turn-outs, along any part of Wabash avenue, between Lake street and the north line of Madison street." *Held*, that the obligation was without binding force, as it was, in effect, a contract not to do that which, in the future, the public interests might demand.

**Memorandum.**—Debt on penal bond. In the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Judgment for defendant on demurrer to declaration; appeal by plaintiff. Heard in this court at the October term, 1893, and affirmed. Opinion filed February 8, 1894.

STATEMENT OF THE CASE.

The Chicago City Railway Company was incorporated by a special act of legislature, approved February 14, 1859, entitled " An act to promote the construction of horse railways in the city of Chicago." (Pr. Laws 1859, page 530.)

By this act certain persons therein named and their successors were created a body corporate and politic, by the name of " The Chicago City Railway Company," for the term of twenty-five years. The corporation was authorized and empowered " to construct, maintain and operate a single or double track railway, with all necessary and convenient tracks for turn-outs, side tracks and appendages in the city of Chicago, and in, on, over and along such street or streets, highway or highways, bridge or bridges, river or rivers, within the present or future limits of the south or west divisions of the city of Chicago, as the common council of said city have authorized said corporators, or any of them, or shall authorize said corporation so to do, in such manner and upon such terms and conditions, and with such rights and privileges as the said common council has, or may, by contract with said parties, or any or either of them, prescribe."

November 16, 1863, appellee entered into an agreement

with the city of Chicago described in an ordinance of the city of Chicago, wherein it was provided that " Whereas, by an ordinance passed November 18, 1861, authority and consent were and are duly granted to, vested in and accepted by the Chicago City Railway Company, and its assigns, to construct single or double track horse railways in, upon and along certain streets of said city, and to use the same for the period in said ordinances mentioned, among which said streets so mentioned are Wabash avenue and Lake street, and whereas, it is deemed and considered by the common council of said city that the permanent interest and welfare of said city demand the exclusion of all such railways from said Wabash avenue, and from all of said Lake street, east of the east line of Peck Court," etc.

The Chicago City Railway Company, appellee, duly accepted the provisions of said ordinance, and thereby relinquished its right to place tracks in Wabash avenue.

February 6, 1865, the powers of appellee were enlarged by an act of the legislature concerning horse railways. Pr. Laws 1865, page 597.

This act is familiarly known as the ninety-nine years act, the charter of appellee being thereby extended for the term of ninety-nine years.

The second section of said act, after referring to appellee and the city of Chicago, contained the following: "All contracts, stipulations, licenses and undertakings, made, entered into or given, and as made or amended by and between the said common council and any one or more of the said corporations, respecting the location, use or exclusion of railways in or upon the streets, or any of them, of said city, shall be deemed and held and continued in force during the life hereof, as valid and effectual, to all intents and purposes, as if made a part, and the same are hereby made a part, of said several acts."

The general law, enacted in 1872, under which the city of Chicago is incorporated, provides as follows: " The city council or board of trustees shall have no power to grant the use of, or the right to lay down any railroad tracks in

any street of the city, to any steam or horse railroad company, except upon a petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes."

May 10, 1881, appellee gave to appellant the following instrument:

" Know all men by these presents, that the Chicago City Railway Company, a corporation created by and existing under the laws of the State of Illinois, is held and firmly bound unto John W. Doane, of the city of Chicago, State of Illinois, his heirs, executors, administrators and assigns, in the penal sum of one hundred thousand dollars ($100,000), for the payment of which sum, well and truly to be made, in lawful money of the United States, the said, the Chicago City Railway Company, binds itself, its successors and assigns.

In witness whereof, the said, the Chicago City Railway Company, by the authority and direction of its board of directors, has caused these presents to be signed by its president, and attested by its secretary, and its corporate seal affixed hereunto, this 10th day of May, A. D. 1881.

The conditions of this obligation are such, that whereas, the said railway company is desirous of obtaining from the city council of the city of Chicago authority and consent to lay its street railway track on Wabash avenue, in said city, from Lake street to Madison street, and whereas, it is necessary for said railway company to obtain the consent in writing therefor of certain property owners along the line of said proposed tracks, before applying to said council for such authority and consent to construct said proposed track, and whereas, the said John W. Doane is the owner of certain property along the line of said proposed tracks, from whom it is necessary to obtain such consent to construct said proposed tracks.

And whereas, said John W. Doane, upon the conditions hereinafter named, and to be kept and performed by said railway company, its successors and assigns, has given his ·written consent, as such property owner, to the laying and

construction of said proposed tracks on Wabash avenue, be-tween said Lake street and Madison street, by said railway company. Now, therefore, in consideration of the consent of said Doane, given as aforesaid, and the further consideration of one dollar, in hand paid to said railway company; by said Doane, the receipt whereof is hereby acknowledged, the said, the Chicago City Railway Company, hereby agrees that it will not hereafter build, construct, or lay down any other, or more than a single track railway, without switch or switches, turnout or turnouts, along any part of said Wabash avenue, between said Lake street and the north line of said Madison street (except necessary curves to connect the said proposed track, on Wabash avenue, with the tracks of the Chicago West Division Railway on Randolph street, and also on Lake street, and to connect said proposed tracks with the tracks of the Chicago City Railway Company on Madison street), nor upon any part of Lake street, between Wabash avenue and State street, except the necessary curves to connect the tracks on said Lake street with the tracks of said City Railway Company on State street, and with the proposed tracks on Wabash avenue; without having first obtained the consent thereof, in writing, from the said J. W. Doane, his heirs, executors, administrators or assigns. And in the event that the said railway company, its successors or assigns, shall violate the conditions, or any of the conditions of this obligation, then the said sum of one hundred thousand dollars ($100,000) shall thereupon become due and payable to the said Doane, his heirs, executors, administrators or assigns, as liquidated damages herein, otherwise this obligation to be null and void.

  (Signed)

     THE CHICAGO CITY RAILWAY COMPANY,
 [SEAL.]      By S. B. COBB, Pres't.
 Attest: W. N. EVANS, Sec."

APPELLANT'S BRIEF, JNO. N. JEWETT AND BENJAMIN F. AYER,
      ATTORNEYS.

 The burden is always on the assailant to show that a contract is in violation of the settled public policy of the

State; and no court will refuse its aid to enforce a contract on doubtful or uncertain grounds. The power should be exercised, like that of declaring a statute unconstitutional, only in cases free from doubt. Swann v. Swann, 21 Fed. Rep. 299; Richmond v. Dubuque & S. C. R. R. Co., 26 Iowa, 191; Richardson v. Mellish, 2 Bing. 229.

The right of a land owner to damages when his property is injuriously affected by the construction of a railroad in the street in front of it, admits of no question. It is also settled by repeated decisions in this State, that if material alterations are made in the railway after it has been opened for use, which are not indicated on the plans submitted by the company when the damages were first assessed, the land owner is entitled to additional compensation for any injury to his property caused by the change. Jacksonville & S. R. R. Co. v. Kidder, 21 Ill. 131; Peoria & R. I. R. R. Co. v. Birkett, 62 Ill. 332; Mix v. Lafayette, B. & M. R. R. Co., 67 Ill. 319; Stone v. Fairbury, P. & N. W. R. R. Co., 68 Ill. 394; Stack v. City of East St. Louis, 85 Ill. 377; Chi. & W. I. R. R. Co. v. Ayres, 106 Ill. 511; Wabash, St. L. & P. R. R. Co. v. McDougall, 118 Ill. 229; same case, 126 Ill. 111; Lake Erie & W. R. R. Co. v. Scott, 132 Ill. 429; Maltman v. Mil. & St. P. R. R. Co., 41 Ill. App. 229.

The parties interested are not obliged to go into court to have the damages assessed by a jury, but may lawfully agree upon the amount to be paid, and such agreements are binding. They may be made before, as well as after, the authority to construct the railway has been procured. An owner of land, whose interests are affected by a bill for a railway pending in parliament or in the legislature, has a right to oppose it, and may, because of his private interest, lawfully agree to abandon his opposition; and it is perfectly well settled that such an agreement is a good consideration for a contract to pay money. It is the common course in England for the parties to settle between themselves, the terms on which the land owner's consent shall be given to a bill for a railway which may damage his estate; and in that there is nothing illegal. Edwards v. Grand Junction Ry. Co.,

1 Myl. & Cr. 650; Stanley v. Chester & B. Ry. Co., 3 Myl. & Cr. 773; Lord Howden v. Simpson, 10 Ad. & El. 793; Simpson v. Lord Howden, 9 Cl. & Fi. 61; Capper v. Earl of Lindsey, 3 H. L. Cases, 293; Hawkes v. Eastern Counties Ry. Co., 1 DeG. M. & G. 737; Eastern Counties Ry. Co. v. Hawkes, 5 H. L. Cases, 331; Taylor v. Chichester & M. Ry. Co., L. R. 4 Eng. & Ir. Ap. Cases, 628; Weeks v. Lippincott, 42 Pa. St. 474; Low v. Conn. & P. River R. R. Co., 46 N. H. 284.

APPELLEE'S BRIEF, JULIUS S. GRINNELL, ATTORNEY.

Appellee contended that the bond in question is either an ingenious promise to present to plaintiff an immense sum, or it is a promise not to build two tracks on any part of Wabash avenue north of Madison street, in either case for the consideration of his consent, and in either case is void. As such promise it can not be enforced; it is illegal. C., M. & St. P. Ry. Co. v. Shea, 67 Iowa 723; 3 Am. & Eng. Enc. of Law, 878; Howard v. First Ind. Church of Baltimore, 18 Md. 451; McGuire v. Smock, 1 Wilson (42 Ind.) 97; Brown v. Brown, 34 Barb. 533; Cook v. Shipman, 24 Ill. 614; Marshall v. Railroad Company, 16 How. 314; Sedgwick v. Stanton, 14 N. Y. 289; Jacobs v. Tobiason, 65 Iowa, 247; Sharp v. Teese, 4 Halst. (N. J.) 352; Pingry v. Washburn, 1 Aiken (Vt.) 264.

The general authority of the directors of a corporation extends merely to the supervision and management of the company's ordinary or regular business. The above principle is a well settled one, recognized by the decisions and the text books. Morawetz on Private Corporations, Sec. 512; Am. & Eng. Enc., Vol. 4, page 207; Cook on Corporations, Sec. 664, et seq.; Beach on Private Corporations, Sec. 421, et seq.; Beach on the Law of Railways, Vol. 1, Sec. 525, et seq.; C. C. Ry. Co. v. Allerton, 18 Wal. 233.

In determining whether a contract is illegal, the entire contract on both sides will be considered, and if the consideration is illegal, no part of it will be enforced. One part can not be discharged and the other enforced. Williams v R. R. Co., 53 Ia. 126; R. R. Co. v. Ryan, 11 Kan. 602; Mar-

shall v. R. R. Co., 64 Ill. 414; R. R. Co. v. Taylor, 6 Col. 1; "Public Policy" or "The Policy of the Law" defined in Am. and Eng. Enc. of Law, Vol. 9, page 880; Chicago Gas-Light Co. v. People's Gas-Light Co., 121 Ill. 530.

It was also contended that the amount stated in the bond is not liquidated damages.

The building and operating a track on Wabash avenue 200 or any number of feet north of Madison street, ought not to entitle him to the full penalty or sum named. Such sum is unreasonable much beyond "compensation," and is manifestly unfair if not outrageous and unconscionable, and besides such could not have been the intention of the parties. 5 Am. and Eng. Enc. 25; Bryton v. Marston, 33 Ill. App. 214; Scofield v. Tompkins, 95 Ill. 190.

Where the parties to a contract have fixed upon a certain sum as damages for its breach, the question whether the amount recovered is to be the sum named, or whether the actual damage is to be considered, depends upon whether the court construes the stipulated sum to be liquidated damages or a penalty.

The courts are guided in determining this question by the language used, the subject-matter of the contract, and the intention of the parties. The use of the words penalty and liquidated damages are not conclusive, although the word penalty *prima facie* excludes the notion of stipulated damages. 5 Am. and Eng. Enc. of Law, 24; Pierce v. Jung, 10 Wis. 30; Pennypacker v. Jones, 106 Pa. St. 237; Davis v. Gillett, 52 N. H. 126; 2d Wait's Actions and Defences, 437; Higginson v. Weld, 14 Gray, 173; Schrimpf v. Tenn. Mfg. Co., 86 Tenn. 219; Hamaker v. Schroers, 49 Mo. 406; Dennis v. Cummings, 3 Johnson's Cases, 297; Stearns v. Barrett, 1 Pick. 451; Gower v. Saltmarsh, 11 Mo. 271; Richardson v. Woehler, 26 Mich. 90; Sedgwick on Damages, Sec. 389, *et seq*.

Mr. Justice Waterman delivered the opinion of the Court.

Under the conditions existing when this contract was made, before appellee could lay any track in Wabash avenue

it was necessary that it obtain the consent of the owners of more than one-half of the frontage on that portion of the street along which it proposed to construct its railway.

The assent of appellant was therefore of value to it; a thing for which it might reasonably be willing to pay compensation; as its right to pay compensation is in this case disputed, the question of the right to pay and to receive a reward, pecuniary or personal, is first to be considered.

The streets of a city are for the use of the public, in whom is vested the right of control over them.

Those who represent the public, as the legislature of the State or the authorities of cities, must, in whatever they do in respect to public ways and grounds, be guided solely by a regard for the public interests; but they may, and frequently do, grant to individuals special rights and privileges in respect to such ways and grounds, doing so because it is believed thereby the public interests will be conserved. The city council of Chicago has only such control over its streets as has been given to it by the State. In 1872, the State saw fit to refuse to give to city authorities the right to permit horse railways to be constructed in the streets of cities, except upon the petition of the owners of a majority of the frontage before which such railway should be laid.

In so doing the State did not, by refusing to completely transfer its control in this regard over public streets, impose upon the owners of abutting property any trust, or charge them with discharge of any public duty. The State might have, and has, vested in the city a trust in respect to the use of its streets; but it could not vest in one or more private property holders the power to exercise in the interest and for the benefit of the public, a discretion as to what use should be made of the public streets. There is in the framework of our State no warrant for bestowing upon property owners, as such, any of the functions of government. The representatives of the people are, under the constitution of this State, selected without reference to property qualifications.

The respective owners of private property fronting on

Doane v. Chicago City Ry. Co.

Wabash avenue are not a public body; they neither hold nor exercise legislative, executive or judicial functions; they are not directly or indirectly selected by the people or removable by them. They are chargeable with no more duties to the public than are the tenants who occupy their buildings, or the customers who frequent their stores.

If they give or withhold their consent to the construction of a street railway before their doors, they do so not in any public capacity, as servants or agents of the public, but as individuals, having regard solely to their individual interests, neither acting collectively nor in concert, nor after discussion and consideration, but independently and with reference, each for himself, to what he deems for his personal interest.

They might all be stockholders and directors in the company to which they gave such consent; might completely own and control it and yet their consent be not rendered invalid; because they have in this matter no public interest to protect or serve.

The expediency of giving to property owners, as such, the power to prevent the devotion of public streets to such uses as the public good may require, is not a matter for the consideration of the court.

In giving or withholding this consent, one owner may override the objections of a thousand, whose united possessions do not equal his. The law does not require that in giving or withholding consent, the property owner shall be governed by any sense of duty to others; he is not selected by his fellow property owners, has taken no oath of office, entered into no obligation, and may be influenced by a consideration of benefit or harm to lands by him owned upon other streets, or to the stock of the corporation seeking to obtain the right of user or stock in other companies whose interests are opposed to such use. Pecuniary considerations, other than the payment of money to him, may be all-powerful with him, and yet neither the public nor individuals have against him any cause for complaint.

The law neither provides nor contemplates any means of determining why any owner gives or refuses consent or any

remedy for his doing either. If, as is urged, there is imposed upon each property owner a duty toward all others who own property upon the street, then it would seem that the *cestui que trusts* must have a remedy for a refusal to perform such duty, or at least, for an abuse of discretion. It is manifest that no property owner can be compelled to give his consent. One property owner can not hold or exercise a trust as to other property owners, because no owner has any property right in the restriction or devotion of the street to certain public uses. Each owner is entitled to compensation if his property is damaged; and the consent by one owner to the laying of railroad tracks does not affect the claim of another for damages.

· The case of paying compensation to a property owner for giving or withholding his consent is not like that of a bribe to an elector to give or withhold his vote at a public election. The elector has a right to vote because he is a freeman; not because he is the owner of property fronting upon a certain street. The vote of an elector, be he rich or poor, has the same weight. The consent or refusal of the holder of a mile of frontage counts 264 times as much as that of the owner of a twenty-foot lot.

In the case of the freeman at an election, there is an appeal to his manhood; when the consent of a property holder is asked, there is presented to him only his pecuniary interest. The freeman can not barter his right to vote, the property owner may any day dispose of his frontage, and thus deprive himself of all power to consent or refuse.

It has repeatedly been held that where private property interests are involved and the opposition to a bill pending before a legislature is based upon contemplated damage to private property, a contract in consideration of the withdrawal of opposition, to pay an indemnity for the injury anticipated from the passage of the act, there being no concealment of the arrangement from the legislature or public, and no purpose to mislead, is valid and not opposed to public policy. Low v. Railroad, 46 N. H. 284–293; Taylor v. Chichester M. Ry. Co., L. R., 4 Eng. & Ir. Ap. Cases, 658;

Sampson v. Lord Howden, 9 Cl. & Finn. 61; Edwards v. The Grand Junction Ry. Co., 1 My. & Cr. 650–667; Stanley v. Chester & Birkenhead Ry. Co., 3 My. & Cr. 773–782; Carter v. Earl of Lindsay, 3 H. L. Cases, 293; Hawkes v. The Eastern Counties Ry. Co., 1 De G., M. & G. (50 Eng. Ch.) 737.

In so far as the English cases above cited hold that an agreement with an individual who is a member of the legislature, to withdraw his opposition as an individual to any measure pending before such body, is valid, it is not likely they would be followed in this country, although it might be found, as in the English cases, that there was no agreement to influence the legislator's vote.

A contract otherwise valid, is not or does not become void because it will, by its abuse, operate to the public injury. Rule   *   *   *   Greenhood on Public Policy, page 27; Commonwealth v. Delaware & Hudson Canal Co., 43 Penn. St. 295; Ambrose v. Root, 11 Ill. 497.

The fact that appellant's consent was obtained before the permission of the council was obtained, and without such permission the promise would not become operative, does not invalidate it.

Contracts, to the carrying out of which legislative action is necessary, are not for that reason opposed to public policy and will be enforced.

In Cross v. The Pinckneyville Mill Company, 17 Ill. 54, it appeared that Cross had made a subscription for stock about one month before any effort was made to incorporate the company. A charter having afterward been obtained from the legislature, the company brought suit upon the subscription; a recovery for the amount thereof was sustained.

So a subscription toward the erection of a building for a female university, conditioned that it should be located in the city of Knoxville, although made before the incorporation by the legislature of such university, was, after the granting of a charter to it, locating it at Knoxville, held to be collectible. Johnson v. Ewing Female University, 35 Ill. 518.

In Cross v. The Pinckneyville Mill Co., *supra*, the court say that the true and correct rule is laid down in Kidwelly Canal Company v. Raby, 2 Price R. 93; in that case, Richards, Baron, said:

" One of the necessary means for carrying into execution the plan, toward which the persons whose names appear on this paper have subscribed, was the procuring of an act of parliament. That was a necessary step and must therefore be upheld. Raby was a subscriber to this paper, and is bound by its terms to accept every measure necessary to its execution."

In Thompson v. Board of Supervisors, 40 Ill. 379, a promise had been made to pay money for the erection of a county building, conditioned that an election be held and the people should thereat decide in favor of the location of the county seat at the town of Aledo, it being shown that the promisor owned a large quantity of land at the contemplated county seat; the judgment rendered for the payment so promised, was upheld.

The consent of property owners to the laying of street railroad tracks in a street, the fee of which is in the public, has no tendency to impose any burden upon any of the other owners of property upon the street. The case is therefore not like those of Howard v. First Independent Church of Baltimore, Md., 18 Md. 451; McGuire et al. v. Smock et al., 42 Ind. 1, or C., M. & St. Paul R. R. Co. v. Shea, 67 Iowa, 723.

If the property of appellant was damaged by the construction of a horse railroad in front of his premises, he was, under the provisions of the constitution of this State, entitled to compensation. Thinking that such construction would be a damage to him, he had a right, before, and as a condition of giving his consent to the laying of such tracks, to bargain and sell the right to damage his property, for the largest sum he could obtain.

It is urged by appellant that the sum named, $100,000, is not a penalty. It is denominated, in the bond, " liquidated damages." We do not think it can be so regarded.

In Goodyear Shoe Machinery Company v. Selz, Schwab

& Co., Chicago Legal News of December 2, 1893, this court said :

"The question presented to a court when asked to enforce the payment of stipulated damages is, first, is the amount reasonably compensatory, or is it a mere penalty, having no relation to the injury actually suffered? if the amount, so stipulated, is such that it violates the fundamental rule of compensation, it will be treated as a penalty, and this without reference to the name which may be given to what is obviously nothing but a penalty.

To the doctrine thus announced we adhere; and in accordance therewith the sum of $100,000, called liquidated damages, we find to be a penalty. There is nothing in the instrument, save the mere name given to this sum, tending in any way to show that this amount is or was thought to be reasonably compensatory; no such allegation is made in the declaration filed in this case, while the contents of the bond as a whole, indicate to the contrary.

The question then arises whether appellee could, at the date of this instrument, make a valid stipulation, under a certain penalty, that it would not at any time in the future place more than one track on Wabash avenue.

It is true that at the time this bond was given, appellee was under no obligation to place there any track at all, and that in 1863, it had been declared by the city that it was not for the public interest that a track be laid in this place, and in consequence thereof appellee had, by agreement with the city, relinquished all right that it then, in 1863, had to place there a track; but this arrangement was one which could at any time be abrogated by mutual consent; and it must be presumed that whenever the common council thereafter consented to the placing of tracks on Wabash avenue, that public interest, at least, was not then averse to the existence of street railroad tracks in that street.

Chicago is a city in which great changes have taken place. What use was, in respect to certain streets, for the public good at one time has ceased to be so at others, and it is in the nature of things impossible that in 1863 or 1881 it could be known that for all future time the laying of one or more

street railroad tracks in Wabash avenue in front of the premises of appellant would be averse to the public interest.

If the Chicago City Railroad Company could make a valid stipulation with appellee in respect to the laying of tracks in Wabash avenue, we see no reason why it might not have made such agreement as to any other number of streets, and, thus, under onerous pains and penalties, have disabled itself for all future time from the doing of that which not only its own interests but the interests of the public, which is the thing to be considered, might have demanded.

The penalty was to be paid, if more than one track was laid, although the State might abrogate the restrictive provision of the act of 1872, and vest in the city government the right, without consent of property owners, to give permission to appellee to lay two tracks in Wabash avenue between Madison and Lake streets.

It is true, as is urged, that the appellee is in many respects a personal and private corporation, existing and managed for the benefit and profit of its shareholders, but it is also in other respects a public corporation, having public duties to discharge, and it is alone because of its undertaking to perform public duties that it was called into existence and has obtained the valuable rights it possesses.

Such a corporation can not, by a contract with an individual, limit the sphere of its action, and contract that it will not, in the future, do that which the public interests may demand.

It is immaterial that appellee did not have, at the time it gave this bond, the right to lay any track in Wabash avenue. It was in a position where it might acquire such right, and it was evident that the time might come when its own interests, as well as those of the public, would demand that it obtain and exercise such right. It was therefore disabled from entering into a contract with appellants that it would not do so. Chicago Gas Light & Coke Co. v. People's Gas Light & Coke Co., 121 Ill. 530; Hays v. R. R. Co., 61 Ill. 422; Peoria & Rock Island R. R. Co. v. C. V. Mining Co., 68 Ill. 489; Marsh v. Ry. Co., 64 Ill. 414; St. Louis, Jacksonville & Chicago R. R. Co. v. Mathews, 71 Ill. 592; St. Louis,

Jacksonville & Chicago R. R. Co. v. Mathews, 104 Ill. 257; Thomas v. R. R. Co., 101 U. S. 83; The State v. Hartford & New Haven R. R. Co., 29 Conn. 538; H. & N. H. R. R. Co. v. N. Y. & N. H. R. R. Co., 3 Robertson (101 U. S.) 83.

Appellee was entitled to demand and receive compensation as a condition for his assent to and petition for the laying of street railroad tracks in Wabash avenue. It is manifest from this bond that both of the parties thereto expected that he would be paid for giving such consent. It is not urged that he is not, upon this instrument, entitled to recover from appellee whatever actual damage he has sustained from the laying of such tracks, but we do not think, as is urged by appellant, that he can, under the declaration filed in this case, recover such actual damages, if any there are. No actual damages are alleged in the declaration to have been sustained, and the court could not, under the pleadings in this case, enter upon the consideration of anything, but whether, under the allegations there made, the plaintiff was entitled to recover the penalty of $100,000 stipulated to be paid upon the laying of more than one track in Wabash avenue, between Lake street and the north line of Madison street.

The judgment of the Circuit Court sustaining the demurrer to the declaration is affirmed.

Mr. Justice Gary.

I assent to the conclusion in this case upon a single ground, that an agreement by a corporation exercising a franchise for the public convenience, that it will not exercise it where the convenience may be thereby promoted, is invalid.

The brief of the appellant invites us to take notice of the *locus in quo*, and we know that the agreement is in restraint of the exercise of the franchise along two blocks, other than the one where the property of the appellant is. Suppose that restraint were on the whole length, within the city, of Archer avenue; the question would be the same as now, differing, not in principle, but degree.