**Jesse Lowe, Jr., and Allie Ruggles Lowe, Executors, and George B. Christie, Appellants, v. Floyd M. Condit and J. Sidney Condit, Executors of the Last Will and Testament of Thomas K. Condit, Deceased, and John Schultz, Appellees.**

1. INDEMNITY—*agreement to indemnify not implied against conduct of the parties.* A contract of indemnity will not be implied against defendants from their agreement to "be responsible for the execution" of certain releases to plaintiffs, where it appears that plaintiffs were the majority landowners in a levee district and, to secure the consent of the minority owners to drainage improvements, plaintiffs agreed to pay assessments against the minority owners' lands, that thereafter plaintiffs refused to consent to further improvements unless released from their obligations to the minority owners, that defendants undertook, but failed, to secure releases from all such minority owners, but assured plaintiffs that such owners had all promised to release plaintiffs and that defendants agreed to be responsible for the execution of the releases and thus procured plaintiffs' consent to the additional improvements, where it also appears that though for ten years thereafter plaintiffs were required by suit to reimburse the minority owners who had not signed releases, although defendants had represented them as having done so, for assessments paid by them, neither plaintiffs nor defendants ever recognized the existence of any contract of indemnification or any liability on the part of defendants, and plaintiffs never attempted to charge defendants thereunder.

2. INDEMNITY—*waiver of implied contract of indemnity.* An implied contract by defendants to indemnify plaintiffs for any payments which they might thereafter be required to make under certain contracts, because of defendants' agreement to be respon-

sible for the execution of releases to plaintiffs of such contract obligations, is waived where defendants agreed to procure such releases as a condition to plaintiffs' signing a petition for certain drainage improvements, and plaintiffs, with knowledge that the releases had not been procured although defendants had so represented, instructed defendants to proceed with the preliminaries and work of making such improvements.

3. CONTRACTS—*indemnification agreement in consideration of signing petition for levee district improvements as against public policy.* An agreement to indemnify plaintiffs for any payments they might be compelled to make under certain outstanding obligations, exacted from defendants by plaintiffs as a condition precedent to signing a petition for improvements by a levee district in which plaintiffs owned land, is contrary to public policy and is unenforceable.

Appeal from the Circuit Court of Cass county; the Hon. GEORGE R. WILLIAMS, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed July 10, 1922.

JOHN M. ZANE, ZANE, MORSE & MARSHALL and GLASS & BOTTENBERG, for appellants.

GRAHAM & GRAHAM and W. H. DIETERICH, for appellees.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

On the 6th day of October, 1919, the appellants, Jesse Lowe, Jr., and Allie Ruggles Lowe, executors of the last will and testament of Jesse Lowe, deceased, and George B. Christie, filed a bill in equity in which it is alleged that prior to the month of August, in the year 1895, Jesse Lowe, deceased, and George B. Christie purchased through the agency of Thomas K. Condit certain lands which were a portion of a larger tract of about 6,000 acres, and which larger tract was afterwards organized as a drainage and levee district called the Cole Creek Drainage and Levee District. All the 6,000 acres were subject to overflow, and were purchased by Lowe and Christie for the purpose of

reclaiming them; that there were certain owners of the land in the tract mentioned who were not willing to sell their lands and not willing to pay their proportionate share of the cost of reclaiming the lands, except by deeding a portion of their land to Lowe and Christie, in exchange for an agreement that Lowe and Christie would pay the cost of the improvements to be made' for said landowners; and that Lowe and Christie, being willing to accept a conveyance of such lands upon the condition mentioned, entered into contracts with such landowners, namely, Thomas K. Condit and John Schultz, who were tenants in common in the ownership of certain of these lands; also with John Knight, Henry W. Oetgen, William Hood and Phillip E. Mann; that in all the contracts made by Lowe and Christie they assumed the obligation, in consideration of the conveyance to them of a portion of the land in said proposed district owned by said parties respectively, to pay the proportionate share or shares of the parties named of assessments for the improvements undertaken by said district, which might be charged against the lands of said parties which they retained as owners. That after said Cole Creek Drainage and Levee District was organized, commissioners were appointed, and an improvement of said lands was provided for by an assessment of $100,712.40, and that the moneys realized thereby were paid out and expended by the district, but that the improvement did not take care of the water flowing upon the lands from the uplands of said district, and another assessment was made for the building of a diversion ditch to further drain said lands. It is further alleged in the bill that Lowe and Christie were nonresidents of Schuyler county at the time mentioned, and were engaged in engineering works at a great distance therefrom, and relied upon Thomas K. Condit, who was the treasurer of the district and also cashier of the First National Bank of Beardstown,

Illinois, for information as to the land, and confided the care of their lands in the district to Frank J. Traut, who was engaged in business ventures with Condit; and that Traut leased the land of Lowe and Christie to a company in which Condit and Traut were interested. The bill also alleges that the affairs of the district were poorly managed, and that Lowe and Christie became dissatisfied with their investment in the lands and decided to dispose of them, and thereupon gave Condit an option to dispose of the same, but that Condit had failed to make sale of the land under the option; that Condit had theretofore represented to Lowe and Christie that it was necessary to make further improvements in the drainage district, and that these improvements would cost at least $25,000, and that he was about to take steps to force the district to issue bonds, or to make an assessment to carry out the new work; and that Lowe and Christie desired that the whole cost of the improvement, or practically the whole cost thereof, should not be thrown upon them, and proposed to Condit that they be released from their contracts to indemnify the landowners hereinbefore mentioned, and be responsible for the assessments only upon their own land; that in response to this proposition Traut and Condit represented to Christie and Lowe that Philip E. Mann had agreed to the proposition on condition that all other landowners with contracts did the same, and that Condit and Schultz would make such an agreement, also Henry W. Oetgen, and that Mann had agreed to cancel his contract of indemnity, and that Condit would make a release of his contracts, and that Schultz would make a satisfactory agreement; and that thereupon a petition for the appointment of three commissioners for the district was sent to Lowe and Christie for their signatures, with the statement that Oetgen had agreed to cancel his contract, that the additional improvement contemplated could not have

Lowe et al. v. Condit et al., 227 Ill. App. 11.

been made without the signatures of Christie and
Lowe, who owned a majority of the land in said dis-
trict, and that Christie and Lowe did not sign said
petition; whereupon on June 14, 1907, Condit wrote
to Christie and Lowe the following letter:

"Yesterday I spent all afternoon with Mr. Traut in-
terviewing Henry W. Oetgen and securing the signa-
tures of Rebman, Bottenberg and Hodgson, as well as
Oetgen to the petition. We worked with Mr. Oetgen
all the afternoon and left him without his agreement
for his part to cancel his contract, but with the un-
derstanding that he would telephone us not later than
eight p. m. last evening. He kept his word and tele-
phoned that on the assurance of Mr. Traut and my-
self that the improvements as outlined would be made
that he would sign a written stipulation releasing you
from the contract now in existence, and I can assure
you that Mr. Oetgen will keep his word in good faith
and as soon as you send the papers to Mr. Traut I
will guarantee that Mr. Oetgen will execute his con-
tract. Now in regard to the contract existing between
Schultz and Condit as a partnership we agree to re-
lease the contract except as to the annual benefits. I
have not yet been able to get Mr. Schultz to cancel the
thing entirely, but will agree to cancel my part of the
annual benefits giving you a written stipulation that
I will pay one-half of any and all benefits assessed
hereafter on the lands owned by Schultz and Condit.
Mr. Traut is pushing the matter rapidly."

The bill alleges that the letter was written by Con-
dit for the purpose of inducing Christie and Lowe to
sign said petition for the proposed improvement, but
that in reply to said letter, Lowe and Christie tele-
graphed to Traut as follows: "Will sign petition for
commissioners and additional improvements when all
the contracts are released. Have wired Graham to
send originals to McClure." That the originals re-
ferred to in the telegram were the original contracts
of indemnity to the landowners heretofore referred
to, which were to be sent to McClure so that he could

draw releases thereof, which releases were to be signed and delivered to Christie and Lowe as a condition to their signing the petition. That on June 17, 1907, Condit wrote the following letter to Christie and Lowe:

"Mr. Traut has shown me your telegram, which reads as follows: 'Will sign petition for commissioners for additional improvements when all the contracts are released. Have wired Graham to send original to McClure.' I suppose at the time your telegram was sent you had not received my letter stating the position of Mr. Schultz so far as related to the contract of Condit and Schultz. Mr. Traut has a written statement of Mr. Mann that he will sign a release of his contract after the work is undertaken, and he has signed the petition and has now gone to Europe so that it would be impossible to have the contract signed until he returns. Oetgen will sign. Traut will sign a release and Schultz and Condit will sign a release but we did not want to execute a release canceling these matters and have it go on record until the courts approve the application of the commissioners for improvements. Now in regard to Hood, your Mr. Lowe told me that as Hood could not be gotten to sign the release that he would not let that stand in the way, but would waive it. I am satisfied that in time I can get Mr. Hood to release his contract but thus far I have not been able to have him say positively he would do it. Now what I want to ask you to do is to sign the petition and let us get this work started, and I will be responsible to you for the execution of the contracts other than Mr. Hood. The proper thing to do would be to have these contracts released and the releases to be placed in escrow to be delivered to as soon as the commissioners had authority from the court to proceed to make the improvements. If this work is done this year it is important that these preliminary steps be taken at once, and I hope you will sign the paper and forward it to Mr. Traut by return mail."

The bill further alleges that in reliance upon the

letters of Condit and upon the representations therein contained, and the promises therein made, and especially in reliance upon the agreement of Condit to obtain the releases, and to be responsible therefor (except as to Hood), that Christie and Lowe signed the petition for the improvements, which without their signatures could not have been allowed; and that thereupon, on the 19th day of June, 1907, Christie and Lowe telegraphed to Condit, ''Petition signed and forwarded today,'' which telegram referred to the petition for said improvements; that the representations as to release or agreements therefor, according to the statements afterwards made by Condit and Traut, were false. The bill also alleges that thereafter, on June 22, 1907, Condit wrote to Christie and Lowe the following letter:

''I beg to acknowledge receipt of your telegram of the 19th saying 'Petition signed and forwarded today.' The petition was received yesterday and in addition to your signature I have secured that of Mr. John Knight so that all the landowners in the district are now in favor of making the improvements which are necessary and as outlined by you when you were here. We will file the petition the first of the week and take the necessary steps so as to get the work under way as early as possible. I will keep you advised from time to time as to what is being done and as soon as the engineer's estimate and the plans made for the raising of the money, we will advise you so that you will be in accord with what is being done. Contracts will be attended to in accordance with my letter.''

That thereafter Condit presented the petition referred to to the county court of Schuyler county, and the court by its order of June 29, 1907, appointed Condit and Traut and Thomas R. Hodgson commissioners of the district; that thereafter, on March 17, 1908, these commissioners resigned and other commissioners were appointed in their place, who made a levy of an assessment for the improvement of the district in the sum of $63,600, and that thereafter, on June 20,

1908, two of the last-named commissioners resigned
and Condit was appointed as commissioner in the
place of one of them; that Christie and Lowe, in full
reliance upon their being released from the indemnity
contract referred to, paid their proportion of the as-
sessment made; that Condit did not procure releases
of their indemnity contracts mentioned from Mann
and Oetgen, and that Mann and Oetgen never executed
or delivered such releases, and that Condit and
Schultz, or either of them, did not execute any release
as promised by Condit, but on the contrary after the
assessment last mentioned was levied upon the lands
of the district, including the lands of Mann, Oetgen
and of Condit and Schultz, and after divers other as-
sessments thereafter had been levied against such
lands in accordance with the law, and after Mann and
Oetgen had paid such assessments respectively, they
demanded reimbursement of the same from Christie
and Lowe; and that thereupon Condit failed to show
that Mann and Oetgen, or either of them, had ever
agreed to make any release of their indemnity con-
tracts; and that in consequence Mann and Oetgen
each brought suits against Christie and Lowe under
their indemnity contracts to recover for the payment
of the assessments by them; and that Christie and
Lowe were compelled to and did pay to Mann the
sum of $2,950.78, and to Oetgen the sum of $1,514.11;
that thereupon Christie and Lowe demanded repay-
ment of said sums from Condit, but that Condit re-
fused to pay the same, and refused to reimburse
Christie and Lowe. The bill also recites the com-
mencement of an action at law against Condit, which
action was then pending and undetermined, and re-
cites the pleadings in the law case. The bill then al-
leges that after the transaction in 1907 referred to,
and during the levying of the special assessment
therefor, and the levying of assessments for the an-
nual benefits thereafter, Condit and Schultz paid the
portion levied upon their lands for many years there-

after, and made no demand of any kind upon Christie and Lowe for reimbursement. But, notwithstanding, Condit and Schultz brought a suit at law commenced to the January term, 1919, of the circuit court against Lowe and Christie, to recover under their indemnity contracts the assessments paid by them. The appellees, Floyd M. Condit and J. Sidney Condit, executors of the last will and testament of Thomas K. Condit, deceased, and John Schultz were made defendants in the bill; and the bill prays that suit commenced by Condit and Schultz be enjoined, and that the indemnity contracts held by them be canceled, and that the executors of the estate of Thomas K. Condit be required to pay to the appellants the sums paid by Christie and Lowe to Mann and Oetgen. The defendant John Schultz and the appellees filed an answer to the bill. The defendant Schultz also filed a cross-bill, seeking affirmative, relief under the indemnity contract, which Condit and Schultz held, from Christie and Lowe, and which they claimed was not released by them, seeking to have the same enforced.

The matters in issue under the original bill and the cross-bill were referred to the master in chancery, who heard the evidence and made his findings, which were to the effect that the appellants were not entitled to relief as prayed for in the original bill, and that the bill should be dismissed for want of equity; that the cross-bill should also be dismissed for want of equity. The findings of the master were sustained by the court on the hearing of the exceptions to the master's report, and the court made a decree in conformity therewith. From this decree an appeal is prosecuted.

The bill for equitable relief which was filed in this case is based on the assumption that from the correspondence, which was carried on between Condit and Traut on the one hand and Lowe and Christie on the other, and which consisted of letters and telegrams, a contract resulted, by the terms of which Condit in-

curred the liability to indemnify Lowe and Christie for any payments which they might thereafter have to make under their contracts with Mann and Oetgen, in the event Condit failed to procure the execution of the releases of such contracts. The particular words, which it is insisted by the appellants have this contractual effect, are contained in Condit's letter to Lowe and Christie of June 17, 1907, and are as follows: "Now what I want to ask you to do is to sign the petition and let us get this work started, and I will be responsible to you for the execution of the contracts other than Mr. Hood." The words used must be construed as having been used in their ordinary meaning. Viewing them in that sense and in the light of the circumstances under which they are used, we are unable to reach the conclusion insisted on by the appellant, that a contract resulted therefrom, under which Christie and Lowe would have a legal right to recover from Condit the money which, under their obligation, they were liable for to Mann and Oetgen in case Condit failed to procure the execution of the contracts releasing them therefrom, or that Condit thereby intended to and did agree to obligate himself to indemnify Lowe and Christie, if Mann or Oetgen should refuse to execute the releases referred to. It is evident that neither Condit nor Lowe and Christie put such a construction upon the language used. Lowe and Christie were repeatedly sued by Mann and Oetgen and compelled to pay under the contracts referred to, yet there was no intimation given by them, or either of them, to Condit at any time during the litigation to take care of the burden of or expense of it, or to pay the judgments thereby incurred, and nothing in the proofs indicate that Condit expected to reimburse Lowe and Christie, or thought he was pecuniarily liable to them therefor. Not until the lapse of over ten years was any claim made concerning a liability on the part of Condit. A claim made after the lapse of so

many years cannot escape the suspicion which naturally arises under these circumstances, that the claim made is an afterthought. The rule is well settled that where the intention of the parties to a contract is not clear, it is permissible in construing a contract to look to the interpretation that the parties thereto have placed thereon to ascertain its true meaning. *Sholl Bros. v. Peoria & P. U. Ry. Co.*, 276 Ill. 267; *Slack v. Knox*, 213 Ill. 190; *Vermont St. M. E. Church v. Brose*, 104 Ill. 206; *Storey v. Storey*, 125 Ill. 608.

We are of opinion that the court properly found that, by the language used, Condit did not intend to and did not as a matter of fact assume the contractual obligation of indemnity claimed by the appellants; and it is clear from the evidence that any responsibility which Condit had assumed by agreeing to procure the execution of the release contracts referred to was waived by Condit and Lowe afterwards. Concerning this matter, Traut testified as follows: "Jacob A. Harman, engineer, of Peoria, was employed to make estimates in 1907. It was then Mr. Mann had agreed to release his claim if it did not exceed $500.00 on his eighty, and Mr. Lowe said, 'Well, we will not wait on that now, we must make whatever improvements are necessary.' At Peoria, got instructions as to what to tell Condit. I told Mr. Lowe that Mr. Condit felt that we should not misrepresent the matter to Mann and Oetgen. It was costing so much more. Mr. Lowe said, 'Well, Mr. Condit need not give the matter any further attention. You can take that up later.' Later I told that to Mr. Condit. Mr. Lowe requested me to tell that to Condit." On October 21, 1907, Condit wrote to Lowe and Christie: "Mr. Traut has shown me your communication of the 18th. The first refers to the annual benefits and account of Condit and Schultz. It was our understanding that as soon as this work was assured, we would sign a release canceling the contract, but it was not to cover the annual

benefits which are now due. And according to our understanding it will fall upon you to pay the annual benefits in accordance with the agreement. I have not mentioned the matter to Mr. Oetgen or Mann and will leave that for Mr. Traut to handle." The suggestion of leaving the matter of the releases for Mr. Traut to handle was acquiesced in by Lowe and Christie, and was in accord with the directions given by Lowe to Condit through Traut, testified to by Traut. Condit was thereby relieved from the obligation of making any further efforts to procure the releases of Mann and Oetgen. It must also be pointed out with reference to Condit's legal liability that any contract to exact from Condit any money or thing of value as a condition precedent upon which Lowe and Christie would sign the petition for the reclamation and improvements of the drainage district in question would not be enforceable because it would be against public policy. "The reclamation of large bodies of swamp and overflow lands, and their consequent improvement, is justly regarded as a matter of public concern. * * * The power to make special assessment is referable to and included within the taxing power. * * * And one of the requisites of lawful taxation is that the purpose for which contributions are demanded shall be public in their nature. * * * The organization of a drainage district is, in part, for the benefit of the landowners in the district, for the special assessments which may be made are limited to the property actually benefited, and further limited to the extent of such benefits; but * * * there is also a public benefit, and it is only by virtue of the drainage being a matter of public importance that involuntary landowner can be taxed for the improvement. The conclusion must be that a drainage district formed under the statute * * * is not a private corporation, but a public corporation." *Elmore v. Drainage Com'rs*, 135 Ill. 269. The rule concerning

the validity of contracts of the character mentioned is correctly stated in 13 Corpus Juris, p. 436: "Agreements which have been held contrary to public policy are agreements in consideration of a person's opposing, or of his approving or not opposing, a public improvement or other public project, or withdrawing his petition for such an improvement. And in some cases the broad general rule has been laid down that any contract is against public policy and void which contemplates the sale of the assent or withholding of consent by an individual, where the exercise of the right may be the basis of or a prerequisite to governmental action." The rule enunciated has been repeatedly applied and emphasized by courts of review, and in our own State in *Theurer v. People*, 211 Ill. 296; *Doane v. Chicago City Ry. Co.*, 51 Ill. App. 353, 160 Ill. 22; *Brieske v. North Chicago S. R. Co.*, 82 Ill. App. 256; *Crichfield v. Bermudez Asphalt Paving Co.*, 174 Ill. 478. For the reasons stated, we are of opinion that the decree dismissing the bill for want of equity was proper and the decree is affirmed.

*Decree affirmed.*