KANSAS CITY, EL PASO & MEXICAN RAILWAY COMPANY
AND CHARLES DAVIS, RECEIVER, V. C.
LAWRENCE PERKINS.

No. 242.

**Engineer's Certificate—Fully Completed.**

Contractors obligated themselves to construct a line of railroad, payment to be made "for each and every mile of its road fully completed and equipped, * * * when any five miles of said road are completed, ready for the rolling stock, upon a certificate of the chief engineer to that effect," etc. Work progressed, and the engineer certified, "that on this date ten miles of the track * * * are laid; that trains have been run over the same; and that it is in a condition suitable for traffic." The bonds to be taken in payment were never delivered to the contractors. The road was sold

out by a receiver.  The contractors indorsed their claim on the road to the plaintiff, who had furnished iron for the construction.  In his suit to subject money (the proceeds of sale) in receiver's hands to his claim, *Held:*

1.  While it is not necessary that any particular language should have been used by the engineer (who by the contract was sole arbiter) in his certificate, which, if in substantial compliance with the requirements of the contract, would be conclusive, unless attacked for fraud or mistake, yet to be conclusive it must be in substance what is required in the contract submitting the matter to him.......................................... 77

2.  The engineer could not bind the parties by doing or certifying what was not authorized by his appointment............ ................. 77

3.  The certificate, that ten miles of the track had been laid and that trains had been run over it, is not evidence that the road was fully *completed and equipped*..... ............... ......................... ... 78

4.  The statement by the engineer, that the section of road *was in suitable condition for traffic*, was but the expression of his opinion, and was entitled to no consideration ................................ ..................... 78

5.  There being no other proof that the work had been completed as contracted for, the contractors were not entitled to the bonds to be delivered on completion of the road; and their assignee has no lien upon the proceeds of the sale of the road in the hands of the receiver ................. 78

Error to Court of Civil Appeals for Fourth District, in an appeal from El Paso County.

This was an effort by Perkins to establish an equitable lien upon money in receiver Davis' hands, arising from the sale of the Kansas City, El Paso & Mexican Railroad, etc.  The basis of the equity was, that the claim owned by the plaintiff was for rails furnished the contractors.  The contractors were to be paid in bonds secured by mortgage upon the road, etc., to be delivered at the rate of twenty bonds of $1000 each for each mile, to be delivered on completion of each section of ten miles.  The grounds of the equity are sufficiently set forth in the opinion.  The trial court, acting without a jury, gave judgment in favor of the plaintiff for amount claimed against the contractors and the receiver, but refused the prayer for the lien.

On appeal, the Court of Civil Appeals reversed the decree of the District Court refusing the lien, and ordered the payment of the judgment out of funds in hands of the receiver.

The opinion of the Court of Civil Appeals complained of in the petition for writ of error (so far as necessary to be stated) is as follows:

"The firm of Morris R. Locke & Co., by virtue of the contract, had an equitable lien on the property of the railroad company as soon as that portion of the road which they had constructed had been received by the chief engineer, and having transferred the contract to appellant, he was the holder of the equitable lien as collateral security for the amount due him by Morris R. Locke & Co.  'Equity considers that done which one has distinctly agreed to do, and is in conscience bound to do.  Equity, therefore, treats a mortgage of things not in esse as a contract which attaches itself to the things when they come into being, and enforces it.  Upon the principle, that upon every acquisition of

property within the description contained in the mortgage a chancellor would decree the mortgagor to execute a mortgage of such subject, it will be considered as though it had been done, and that of every article of property so acquired there was an actual mortgage then executed.' Jones on Railroad Securities, sec. 122; Jones on Chat. Mort., sec. 175.

"We are of the opinion, that the contract is not an entirety, for it is expressly provided, that 'when any five miles of said road are completed, ready for the rolling stock, upon the certificate of the chief engineer to that effect,' that the bonds should be issued. We do not think the requirement of the road being 'fully completed and equipped' applies to the five-mile sections for each of which bonds were to be issued, but applies to the condition of the road when taken as a whole. The condition prescribed for each intermediate five-mile section is, that it is 'ready for the rolling stock.' The certificate of the chief engineer is a full compliance with the terms of the contract. The provision is, that he shall certify that the road is 'completed ready for the rolling stock;' and he does certify that ten miles of the track were laid, that trains had been over the same, and that it was in a condition suitable for traffic. There is in the contract an implied promise on the part of the parties to it to be bound by the award of the engineer, and they are bound by it, unless it was alleged and proved that there was fraud or mistake in the award made by him. 1 Rorer on Rys., 233.

" 'In short, except for fraud or mistake in matter of computation, it is final. This principle is based not only on the fact that such engineer is the chosen arbiter of the parties, and whose decision is to be final, but also upon the ground of his superior capacity of judgment between them, and the necessity, in such extensive works, of closing up the accounts at short intervals, beyond the necessity of subsequent inquiry, so that the respective parties may know the true state of their pecuniary matters.' 1 Rorer on Rys., 461, 462.

"There was no attempt on the part of the chief engineer to construe the contract; he merely certified to a fact, and by the certificate of that fact the railway company was bound. Railway v. Dilley, 65 Texas, 685.

"There was no allegation of fraud or unfairness upon the part of the engineer, or that he made any mistake in giving his certificate, and there is no proof to establish either of these matters. In the absence of both allegation and proof on these matters, the decision of the engineer was final and bound the parties. No fault at any time seems to have been found with his decision, the only objection being that the certificate is not the one required by the contract. From our standpoint, it does not matter whether the parts of the contract referring to what should happen in certain contingencies intended a 'penalty' or a 'forfeiture.' The railway company first failed to comply with the terms of the contract in refusing to issue the bonds and pay the subsidy, and rendered it impossible for Morris R. Locke & Co. to finish the railroad. It was agreed between the parties that the receiver

should sell the railroad property, the lien, if any, of appellant to follow the proceeds, and we are of the opinion that the money should be subjected to the lien. The judgment of the lower court will be affirmed as to Morris R. Locke & Co., but will be reformed as to the receiver and railway company, so as to foreclose a lien on the $50,000 received for the railway property."

The contention turned upon the effect of the certificate of the chief engineer of the railway, who by the contract had unlimited power to pass upon disputed questions as to the material and work performed under the contract. The certificate is as follows:

"OFFICE OF CHIEF ENGINEER
"OF
"KANSAS CITY, EL PASO & MEXICAN RAILWAY COMPANY

"OF TEXAS.

" *To whom it may concern:*                    "November 30, 1888.

"I hereby certify, that on this date ten miles of the track of the Kansas City, El Paso & Mexican Railroad are laid; that trains have been run over the same, and that it is in a condition suitable for traffic.                    [Signed]                    "C. S. MASTON,

[L. S.]                                                       "Chief Engineer.

"Attest:  HENRY NEVINS, Secretary."

There was no other sufficient testimony to the construction of the road according to contract. The bonds were never delivered to the contractors.

*Davis, Beall & Kemp* and *Jay Good,* for plaintiffs in error.—The Court of Civil Appeals erred in that part of its opinion which reads as follows: "There was no attempt on the part of the chief engineer to construe the contract; he merely certified to a fact, and by the certificate of that fact the railway company was bound."

The foregoing conclusion of law contained in said opinion is erroneous, for the following reasons: Because the certificate required to be made by the chief engineer was, that "five miles of said road was completed, ready for the rolling stock." He did not make this certificate—not one word of it—but made another and different certificate entirely, and in making it he necessarily had to construe the contract. The only proper certificate for him to have given was in the very words of the contract itself, leaving the legal construction of the contract to the courts. The contract did not require him, as in ordinary cases of award, to frame a certificate in his own language. It prescribed the very words for him to certify; and when he ignored the words and undertook to use equivalent language, he did it at the risk that his certificate was either in strict accordance with the legal construction of the contract, or it was an absolute nullity.

Certificate of engineer: Railway v. Dilley, 65 Texas, 685; Wright v. Meyer, 25 S. W. Rep., 1125; 2 Wood on Rys., 1 ed., p. 995; Railway v. March, 114 U. S., 549.

Forfeiture of contract: Eaken v. Scott, 70 Texas, 442; Wright v. Dobie, 3 Texas Civ. App., 194; Wood v. Railway, 68 Iowa, 491; Railway v. Geoghegan, 9 Bush (Ky.), 56; Petro v. Railway, 1 H. & M., 468; Ross v. Railway, 1 Woolw. (U. S.), 26; Wat. on Spec. Perf., secs. 323, 384, 385, 387; Field on Dam., secs. 134, 136; Rev. Stats., arts. 4219, 4220, 4278; Bridge Co. v. St. Louis, 43 Fed. Rep., 768.

Entirety of Contract: 2 Wood on Rys., 1 ed., 1003; Cox v. Railway, 44 Cal., 18; Barker v. Railway, 27 Vt., 766; Batsell v. Railway, 4 Texas Civ. App., 580, 587; McFarland v. Lyon, 4 Texas Civ. App., 587; Darnell v. Lyon, 85 Texas, 455.

*Millard Patterson* and *H. B. Barnhart,* for defendant in error.—The trial court erred in holding that the plaintiff has no lien upon the fund of $50,000 now in the hands of Charles Davis, receiver, and in holding that plaintiff is not entitled to payment of his debt against Morris R. Locke & Co. out of the same, and in holding that plaintiff did not have an equitable lien upon the property of the Kansas City, El Paso & Mexican Railway Company, through the sale of which said fund was realized; and the judgment of the court, in so far as it determines and decrees that plaintiff has no lien upon the property of said railroad, or the proceeds of the sale thereof in the hands of said receiver, is erroneous, for the following reasons: The uncontradicted testimony showed that said Kansas City, El Paso & Mexican Railroad Company entered into the contract of October 13, 1888, as set forth in plaintiff's first amended original petition, and that under said contract of date October 13, 1888, Morris R. Locke & Co. did, before the 1st day of December, 1888, complete, ready for the rolling stock, the first ten miles of the railroad mentioned in said contract, in all respects as required by said contract; that the certificate of the chief engineer therein required was by said engineer executed and delivered on the 30th day of November, 1888, and that on the 1st day of December, 1888, said Morris R. Locke & Co. were entitled to the delivery of $100,000 in bonds and the same amount in stock, for each five miles of said road when so completed, and that said company had agreed, by and through its board of directors, to execute and file, previous to said time, a mortgage upon all of its property to secure said bonds, as alleged in plaintiff's petition. That said mortgage was never executed, and that said bonds were never delivered; that said company had, prior to said 1st day of December, 1888, wholly violated its contract with Morris R. Locke & Co., and did wholly violate it on said date, and that said failure to execute said mortgage and deliver said bonds was entirely without excuse upon its part, and without fault upon the part of Morris R. Locke & Co.; and that said company was on said date indebted to said Morris R. Locke & Co. in the sum of $200,000 in bonds

for the work which had been done by them, and that by the transfers and assignments set up in said petition, said bonds and compensation then coming to said Morris R. Locke & Co. were payable and deliverable to plaintiff or his assignor, the Pennsylvania Steel Company; that at the time of the bringing of this suit, and all times since he furnished the 889½ tons of rails, for which judgment was rendered in this case, plaintiff has had an equitable lien upon all the property of said company, on which it promised to give a mortgage as alleged in plaintiff's said petition, and that plaintiff had such equitable lien to secure him in the purchase price of said rails at the time of the sale of the property of the said company by Charles Davis, receiver, and that he now has an equitable lien, as well as a lien in law, upon said funds in the hands of said receiver, and is entitled to the payment of his debt out of said fund.   Railway v. Gentry, 69 Texas, 633; Parks v. O'Connor, 70 Texas, 385; Bank v. Higgins, 72 Texas, 68; Daggett v. Rankin, 31 Cal., 321; Pinch v. Anthony, 8 Allen (Mass.), 536; Husted v. Ingraham, 75 N. Y., 256; Ridgeley v. Iglehart, 25 Am. Dec.; 3 Pom. Eq. Jur., sec. 1235; Story Eq. Jur., sec. 1215.

*Fisher & Townes*, attorneys for defendant in error, and *Millard Patterson* and *H. B. Barnhart*, of counsel, in an argument for rehearing, discussing the legal effect of the certificate of the chief engineer, argued:

This certificate is from the chief engineer of the railroad company. It is dated November 30, 1888. It was given in the office of the chief engineer, with the knowledge and participation of the railroad company, as it is attested by its secretary and corporate seal. It is addressed to all persons interested in the matters to which it relates, and was delivered to Locke & Co. as the official and authoritative statement and admission by the railroad company that the matters therein expressed were true.   What, then, are the matters so passed upon and authoritatively stated?

1.  That on November 30, 1888, ten miles of the railroad track had been laid.

2.  That trains had been actually run over the same.

3.  That this ten miles of track was then in a condition suitable for traffic.

As we understand the opinion of the court, it is conceded that the first and second items above enumerated were within the jurisdiction of the engineer, and as to them the certificate is conclusive, but that the third statement is matter of opinion and consequently settles nothing.

With all due respect to the court, we submit that the opinion of a "sole judge and arbiter" as to matters submitted to him is all that can ever be given.   Judges and arbiters are persons appointed to examine into facts, arrive at opinions, and bind parties by the conclusions thus reached.   This court, in its judgments and decrees, only embodies the deliberate conclusions and opinions at which it has ar-

rived, after examination of the record, as to the facts and law involved in the particular case; and so it is with a person made sole judge and arbiter of any matter by agreement of parties interested therein. He must investigate the facts and arrive at his conclusions, and declare the same. In the case at bar, the engineer was to investigate and determine all questions as to the quality and amount of work done, and also as to the performance of all conditions in the contract, and the determination reached by him, whether the simple statement of a fact within his knowledge, or an opinion or decision arrived at by investigation from other sources, was to be final and conclusive, and stand as the final judgment of a court of competent jurisdiction with regard to the matter determined.

One of the very questions which the parties by their agreement submitted for his final determination was, the condition of each five miles of the road upon which the payment of an installment of stocks and bonds was sought. It is true that the language used by the parties is, that he shall certify that the road "is in a suitable condition for the running of trains thereon," while the language of the certificate is, that the road is in a condition "suitable for traffic;" but we can not see how the language used is any more the expression of an opinion than that provided for in the contract.

If the language used in the certificate was just that used by the parties, would this court disregard the same on the ground that it expressed only the opinion or decision of the engineer, and not a fact? Would not a complete and perfect answer to such position be, as everywhere held by the courts, that the determination of such matters required trained and competent men with special knowledge on such questions, and that this fact constituted a special reason for commending contracts providing for such settlements by competent arbiters, chosen in advance by the parties, instead of leaving them to the ordinary methods of trial and adjudication?

But returning to the certificate as given. It states that the ten miles of road were "in a condition suitable for traffic." Does not this embrace exactly the idea contained in the forms of expression used by the parties to the contract, viz., "ready for the rolling stock," or "in a condition suitable for running trains thereon," or "in so far completed as to be in a condition suitable for the running of trains thereon?" Can a railroad track be suitable for traffic until it is ready for rolling stock, and so far completed as to be in a condition suitable for the running of trains thereon? Traffic, in connection with railroad business, has a well understood meaning. It is the carrying of freight and passengers over the road in suitable cars, propelled by steam. No man can misunderstand it. To be suitable for traffic, is to be in a condition in which trains for freight and passengers can be drawn over the road with that degree of safety and dispatch customary in such transportation. It seems to us, that a contention that the certificate in its present form is in any material respect different from what it would be had

it copied the language of the resolution or contract, and said "ready for rolling stock," or "in a condition suitable for running trains," is but a play upon words, and without merit, either in law or equity.

We therefore urge very earnestly, that the certificate of the engineer shows, that on or before November 30, 1888, ten miles of the railroad had, by the labor and material of Locke & Co., been brought to that stage which entitled Locke & Co. to the installments of stocks and bonds to be paid for that much of the road, and that this decision is just as binding upon the railroad company, and others claiming or holding under it, as the final judgment of a court of competent jurisdiction so settling the matter would have been, and hence, by the agreement of the parties, that issue is res adjudicata.

There are some expressions used in some of the cases bearing on this subject, to the effect that the decisions of engineers are conclusive upon matters of computations and estimates, but on other matters the certificates are not binding. We submit, in every instance in which such expressions are used they have direct reference to the agreement submitting questions for decision, and the matters on which the certificates were held not to be binding, were so declared not because of any legal difficulty in submitting such matters to final determination by the arbiters, but because in the contract under consideration they had not agreed to be so bound. We have endeavored to show, and we think successfully, that in this case the matters certified to are the very ones which the parties agreed should be submitted and decided by the engineer. So the seeming limitations as to the power of the arbiter intimated in the decisions above referred to have no application here.

BROWN, ASSOCIATE JUSTICE.—C. Lawrence Perkins sued Morris R. Locke & Co., the Kansas City, El Paso & Mexican Railroad Company, and Charles Davis, receiver of that company, to recover of Locke & Co. a debt claimed to be due for steel rails furnished by plaintiff to said Locke & Co. for the construction of the railroad of the said railroad company, under a contract between it and the said Locke & Co., and also to enforce an equitable lien for said debt upon the funds in the hands of the receiver Davis, the proceeds of the sale of the railroad, which lien plaintiff claimed by virtue of an assignment of said contract to him by Locke & Co. The case was tried in the District Court before the judge, who gave judgment for plaintiff against Morris R. Locke & Co. for the debt, but refused to subject the fund to its payment, from which judgment Perkins appealed. The Court of Civil Appeals reversed the judgment of the District Court and entered judgment against Locke & Co. for the debt, and also a judgment subjecting the fund in the receiver's hands to the payment of the debt. The railroad company and Davis sued out this writ of error.

The facts as found by the Court of Civil Appeals, so far as necessary to determine the points presented here, are in substance as follows:

On the 10th day of October, 1888, the board of directors of said railroad company in proper form adopted a resolution authorizing the president and secretary to enter into the contract with Morris R. Locke & Co., and authorizing the issue of the bonds of the corporation to the amount of $400,000, and the execution of a mortgage to secure the same, which resolution prescribed the form of the mortgage and the bonds, the mortgage to be made to and the bonds payable to the Atlantic Trust Company of New York, or bearer. The mortgage contained the provision, that "none of the bonds should be valid until certified by the trust company, and that none of said bonds should be so certified until five miles of said road had been so far completed as to be in a suitable condition for the running of trains thereon." The form of bond contained a stipulation, that the amount of the bonds issued should be limited to $20,000 per mile of its road "actually completed and in a suitable condition for the running of trains thereon." The mortgage provided, that whenever five miles had been constructed the railroad company might submit to the trust company the certificate of its chief engineer, showing how many miles had been completed, and other facts, and "that the same is in suitable condition for running trains thereon;" when the bonds were to be delivered to the treasurer of the company.

On the 13th day of October, the date of the contract with the railroad company, Morris R. Locke & Co. made an assignment in writing of all their rights and interests in the said contract to the New York Railway Supply Company, Limited, which assigned the contract to Perkins, by whom it was assigned to another supply company, and by that reassigned to Perkins.

On the 13th day of October, 1888, Morris R. Locke & Co. entered into a written contract with the Kansas City, El Paso & Mexican Railroad Company, of Texas, which is in substance, so far as necessary to the decision of the questions raised here, as follows: Locke & Co. bound themselves to construct, build, and equip, with certain cars and one engine, the said railroad from the city of El Paso, Texas, to the boundary line between Texas and New Mexico, a distance of twenty miles, the said road to be constructed in such manner as would conform in every respect to the specifications which were attached to and made a part of the contract. The first ten miles were to be fully completed and equipped as specified on or before the 1st day of December, 1888, and the balance to be completed, equipped, and in operation on or before the 1st day of January, 1890.

For all work done and performed and material furnished under the contract, the railroad company agreed and bound itself to pay the "sum of $20,000 for each and every mile of its road, fully completed and equipped as herein before provided, the payment to be made as follows: When any five miles of said road are completed, ready for the rolling stock, upon the certificate of the chief engineer to that effect," the railroad company was to deliver to the said Locke & Co.

the bonds of said corporation, issued in accordance with and in conformity to a resolution of the board of directors, adopted on the 10th day of October, 1888, secured by a mortgage upon all the property of the said railroad company, to the amount of $20,000 per mile for each mile of road so completed, and $20,000 per mile of the paid up capital stock of said corporation, and to continue to make like payments for every five miles of road so completed until the whole should be finished. Upon full completion, the remainder of the stock to be issued to the amount of 4000 shares full paid stock. Also, when the first ten miles should be completed, the said Locke & Co. were to receive one-half of the subsidy subscribed by the citizens of El Paso, and the other half upon completion of another contract with another company, or rather with the same company incorporated under the laws of New Mexico.

The specifications attached to and made a part of the contract contained the following clause: "The chief engineer of the Kansas City, El Paso & Mexican Railway Company, of Texas, shall be the sole judge and arbiter in all cases of disagreement, difficulty, or dispute as to the quality and amount of work performed, and also in relation to all other matters that may arise in relation to or touching the proper performance of any or all conditions; and his decision given in writing shall be in the nature of an award, and the same shall be as conclusive upon all questions that may arise as the final judgment in a court of competent jurisdiction, and no appeal shall be taken or suit instituted or prosecuted in any court to set aside or contest the same, or to readjust or question the validity or correctness of any matter upon which he has passed."

On the 13th day of October, 1888, Morris R. Locke & Co. addressed a note to the treasurer of the Kansas City, El Paso & Mexican Railroad Company, of Texas, stating that the contract had been assigned to the New York Railway Supply Company, Limited, of New York City, and asking that the $200,000 in bonds, to be delivered on completion of the first ten miles, be delivered to that company. The orders were given as requested, and, with the assignment of the contract, were assigned and passed to Perkins.

On the same day that the contract was executed and assigned Morris R. Locke & Co. made and executed a note for $34,000 payable to their own order and indorsed in blank, delivering it to the New York Supply Company with the assignment of the contract. This note passed to Perkins with the other papers. Perkins, through the Pennsylvania Steel Company, supplied the steel rails for the road to be used by Locke & Co., which were used in the construction of the road. Locke & Co. proceeded with the work and constructed the road for the first ten miles, and partially constructed the remainder of it to the line of the State by the 1st day of December, 1888.

On the 30th day of November, the chief engineer of the railroad company gave this certificate:

*" To whom it may concern:*                    "Nov. 30, 1888.

"I hereby certify, that on this date ten miles of the track of the Kansas City, El Paso & Mexican Railroad, of Texas, are laid, that trains have been run over the same, and that it is in a condition suitable for traffic.          [Signed]    "C. S. MASTON, Chief Engineer."

The mortgage was never executed nor the bonds issued. Locke & Co. presented the certificate to the railroad company, which refused to execute the mortgage or to issue and deliver the bonds, and Locke then ceased to work on the road.

There were some negotiations between the railroad company and Perkins or his attorney relative to the adjustment of the matter and resuming work, the point of difference seeming to be the payment by Perkins of some debts contracted by Locke in the construction of the road. The District Court of El Paso County placed the railroad property in the hands of a receiver, Charles Davis, and by agreement the road was sold to Jay Gould for $50,000.

It was agreed, that the claim of Perkins and Locke should have the same lien upon the proceeds of sale as it was entitled to against the road itself.

The citizens of El Paso subscribed the sum of $48,000 as a subsidy to be paid to the railroad company, upon condition that it built its road and completed it for the first ten miles by the 1st day of December, 1888. The subsidy was not paid.

There was some evidence, independent of the certificate, tending to show that the first ten miles of the railroad were built in the time and according to the contract, but there was much more and certain evidence to the contrary. The trial court found, that neither the first ten miles nor any part of the road was constructed and completed within the time nor according to the terms of the contract, and that the certificate of the engineer was not such as the contract required, and was insufficient to prove the completion of the first ten miles of the road as required by the contract.

The Court of Civil Appeals made the following findings: "10. That the first ten miles of the Kansas City, El Paso & Mexican Railroad, of Texas, were completed by Morris R. Locke & Co. in accordance with and in compliance with their contract of the 13th of October, 1888, to build said road." After stating the making of and copying the certificate of the engineer, the court continues: "That said certificate was such as was required by the contract on the 13th day of October, 1888, between Morris R. Locke & Co. and the Kansas City, El Paso & Mexican Railroad Company, of Texas, and is sufficient to prove the completion of said railroad, as is provided for in said contract."

It is manifest that the Court of Civil Appeals based its tenth finding of fact upon the legal effect given by it to the engineer's certificate, and not upon the evidence, and that it did not intend to find from the

evidence other than the certificate that the road had been completed in accordance with the contract. If the court was correct as to its ruling upon the effect to be given to the certificate of the engineer, its judgment must be affirmed; otherwise, it must be reversed.

The law does not require that any particular language should have been used by the engineer in his certificate, and if it was in substantial compliance with the requirements of the contract it would be sufficient, and would be conclusive, unless attacked for fraud or mistake in computation. Railway v. Henry & Dilley, 65 Texas, 691. In order that the certificate may have this effect, it must be in substance what was required. The engineer could not bind the parties by doing that which he was not authorized to do. The specifications made the chief engineer the sole arbiter of the amount and quality of the work performed, and of the proper performance of all conditions, and this, with the terms of the contract, construed together, fix the limits of his authority, beyond which his acts are not binding.

The contract does not prescribe any form of words to be used, but provides, in effect, that the engineer shall certify the result of his examination of the work. That portion of the contract in which this subject is treated is in this language: "The railroad company shall pay for the work the sum of $20,000 for each and every mile of its road *fully* completed and equipped as herein before provided, the payment to be made in the following manner: When any five miles of said road are completed, ready for the rolling stock, upon certificate of the chief engineer to that effect, the said party of the second part shall pay over to the parties of the first part the bonds of the said railroad company, secured by a mortgage upon all the property and franchises of said company, to the amount of $20,000 per mile for each mile of said five miles *so completed*," etc. The payment was to be made for the road fully completed, and that payment to be made for each mile of the five miles *so completed*. Construing the language relied upon by the defendant in error in connection with that with which it is associated, it clearly means that the payment is to be made when the five miles have been completed in compliance with the specifications. The words "ready for the rolling stock" did not qualify or limit the manner of completion, but expressed the fact that, being completed, it would be ready for the rolling stock. If this is not true, then the company might have been required to pay for uncompleted road, when it had specially contracted to pay for none but fully completed road. In addition to this language, we find that Locke & Co. agreed and bound themselves to construct the road in such manner as to conform in every respect to the specifications, which were made part of the contract, and to fully complete ten miles on or before the 1st day of December, 1888. In addition to these facts, there is in the contract another provision which aids in determining the intention of the parties. The company was to accept and pay for each section of five miles as completed, paying the full price therefor. If it had accepted

a section not completed according to the specifications, it would have been bound by that acceptance, and could not have enforced a claim for any failure of the contractors to comply with the terms of the agreement. This certainly could not have been the intention of the parties to this contract, which is so carefully drawn as to manifest an intention to protect the company from any such results.

The certificate of the chief engineer stated but two facts: (1) that ten miles of the track had been laid; and (2) that trains had been run over it. The statement that it was in suitable condition for traffic was but the expression of his opinion, and entitled to no consideration. It does not require argument to show that the terms of the certificate do not cover a substantial completion of the road in accordance with the specifications. The track might be laid, and trains might be run over it, and yet it would be wholly incomplete as prescribed by the specifications.

The argument made, that the word "completed" does not require that the road should be such as are built in the East, does not meet the question, which is, does the certificate show a *finishing* of the work, not in every minute particular, but substantially according to the specifications, which is all that the law requires? O'Neal v. King, 3 Jones L. (N. C.), 518; Johnson v. Female University, 35 Ill., 518.

We conclude, that the certificate did not comply in essential particulars with the requirements of the contract, and was not evidence of the completion of the road according to its requirements. To hold this certificate sufficient, would enable Locke & Co. to avoid the performance of their obligation to perform the work "in such manner as will in every respect conform to the specifications," and at the same time deprive the railroad company of any remedy for the failure.

Defendant in error claims that the railroad company accepted the ten miles as constructed, but the trial court found the issue against him, and it is unnecessary to discuss what would have been the rights of Perkins if the work had been accepted.

Perkins had no rights as against the defendants the Kansas City, El Paso & Mexican Railroad Company, of Texas, and Charles Davis, receiver, except such as he derived from Morris R. Locke & Co., and the said Locke & Co. not having performed their contract so as to entitle them to have the bonds of the company delivered to them, had no lien upon the road, and therefore none upon the proceeds of the sale made by the receiver. Plaintiff not having shown himself entitled to any relief against the railroad company or Davis, other errors, if any, committed in the trial against the plaintiff, become immaterial, and will not be examined.

Whether the contract was entire or divisible, and the clause claimed to work a forfeiture of the entire contract was rightly construed, would be an interesting question for examination; but since the defendant in error can recover nothing upon the contract, and has re-

covered for the value of the work done, these questions are unimportant in the determination of this case.

The Court of Civil Appeals erred in reversing the judgment of the District Court and in entering judgment foreclosing a lien in favor of defendant in error upon the fund in the hands of the receiver, for which error the judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is affirmed.

*Judgment of District Court affirmed.*

Delivered March 4, 1895.